**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Michael Stanley WARONEK,**
**Defendant-Appellant.**

**No. 77–2200.**

United States Court of Appeals,
Seventh Circuit.

Argued May 23, 1978.

Decided Sept. 5, 1978.

Ronald B. Paskin, Madison, Wis., for defendant-appellant.

Alvin E. Whitaker, Asst. U. S. Atty., Madison, Wis., for plaintiff-appellee.

Before SWYGERT and CUMMINGS, Circuit Judges, and CAMPBELL, Senior District Judge.*

WILLIAM J. CAMPBELL, Senior District Judge.

The sole issue raised in this appeal is whether the district court erred in refusing to instruct the jury that an essential element of the crime of theft from an interstate shipment is the accused's intent to permanently deprive the owner of his property. We hold that the district court did not so err, and affirm the defendant's conviction.

* Senior District Judge William J. Campbell of the Northern District of Illinois is sitting by designation.

1. Waronek testified that Pritchard initiated the transaction. Defendant further testified that

The relevant facts are undisputed. Defendant-Appellant Waronek owned and operated a tractor. Pursuant to a written agreement, Waronek undertook to haul loads for L.T.L. Perishables, Inc., of South St. Paul, Minnesota. On June 7, 1977, defendant accepted an offer to haul a trailer load of beef from Illini Beef Packers, Inc. in Joslin, Illinois to Midtown Packing Company, in New York City. After his truck was loaded by the shipper's personnel, Waronek signed a bill of lading for 95 forequarters and 95 hindquarters of beef.

Upon leaving Joslin, Illinois, Waronek proceeded northward to his home in Watertown, Wisconsin, instead of heading eastward to New York. Waronek testified that his reason for making this detour was to drop off some of his advance money with his wife and to make a minor repair in his refrigeration unit. While in Watertown defendant contacted employees of the Royal Meat Company, and requested the butchering and preparation of four hindquarters of the beef. He instructed the employees that two quarters be prepared for himself, and two quarters to be prepared and stored for friends. Lowell Pritchard of Royal Meat Company testified that Waronek asked him if he would be interested in purchasing ten hindquarters at sixty cents per pound—a price substantially lower than the prevailing wholesale rate. Pritchard became suspicious and contacted an officer of the Watertown Police Department, who instructed Pritchard to proceed with the transaction and to obtain information regarding Waronek.[1]

Upon arrival in New York, defendant's truck was unloaded and found to be short nineteen hindquarters of beef. Waronek then telephoned his dispatcher in St. Paul and told him that he was short nineteen hindquarters, that he knew where the beef went, and that he would make good on it

he sold the ten hindquarters to cover himself in a time of financial difficulty, fully intending to pay for the shortages out of future settlements with L.T.L. Perishables, Inc.

out of future settlements. Although instructed to contact the New York police, Waronek failed to do so. Thereafter, defendant was arrested by agents of the Federal Bureau of Investigation.

A grand jury in the Western District of Wisconsin, where part of Watertown is located, charged in an indictment that Waronek willfully, knowingly, and with intent to convert to his own use, did embezzle and unlawfully take from a motor truck fourteen hindquarters of beef valued at approximately $2149.00. The indictment further alleged that the hindquarters were moving as, were a part of, and constituted an interstate shipment of freight from Joslin, Illinois, to New York, New York. The indictment specified that the alleged acts constituted a violation of 18 U.S.C. § 659.[2]

At the close of the evidence, during the conference on jury instructions, counsel for defendant requested the court to instruct the jury as follows:

"Three essential elements are required to be proved in order to establish the offense charged in the indictment:

FIRST: The act of unlawfully taking away, from a motor truck, property moving as, or which constitutes a part of, an interstate shipment of freight or express, as charged in the indictment; and

SECOND: Doing such act unlawfully, and with the intent to convert the property to the use of the accused.

THIRD: Doing such act with the intent to permanently deprive the owner of the property."

The district court refused to instruct the jury on the elements of the offense as tendered by the defendant, but rather instructed the jury in language substantially track-

ing the pattern instruction in Devitt and Blackmar, *Federal Jury Practice and Instructions,* § 46.06:

"Two essential elements are required to be proved in order to establish the offense charged in the indictment:

FIRST: The act of embezzling, or unlawfully taking from a motor truck, goods moving as, or which constitute a part of, an interstate shipment of freight as charged in the indictment; and

SECOND: Doing such act willfully, knowingly, and unlawfully, and with the intent to convert the goods or property to the use of the accused."

On the basis of a line of Third Circuit cases, defendant argues here, as he did below that an essential element of a violation of 18 U.S.C. § 659 is the accused's intent to permanently deprive the owner of the property. If the proposed instruction correctly propounded the law, and had the trial judge agreed to give the proposed instruction, the defendant would have been able to argue to the jury the evidence of his intent to pay back L.T.L. Perishables, Inc. out of future settlements for the hindquarters he converted. Waronek asserts that this evidence, if believed by the jury, would be sufficient to enable the jury to find that he did not intend to permanently deprive the owner of the value of the hindquarters.[3]

In contending that an element of the crimes embraced by 18 U.S.C. § 659 is the intent permanently to deprive the owner of his property, defendant proceeds on the assumption that the crime charged in the indictment and the facts proven at trial amount to larceny, as that crime existed at common law, and that 18 U.S.C. § 659 is limited in application to the common law

2. In relevant part, 18 U.S.C. § 659 provides:
  "Whoever embezzles, steals, or unlawfully takes, carries away, or conceals . . . from any . . . motortruck . . . with intent to convert to his own use any goods or chattels moving as or which are a part of or which constitute an interstate or foreign shipment of freight, express, or other property . . . [s]hall in each case be fined not more than $5,000 or imprisoned not more than ten years, or both; . . . ."

3. There is authority that a lack of evidence of intent to permanently deprive the owner of his property will defeat a conviction under a larceny statute. See *Government of Virgin Islands v. Williams,* 424 F.2d 526 (3d Cir. 1970). But, as demonstrated in the text, *infra,* 18 U.S.C. § 659 does not proscribe conduct amounting only to larceny. Further, § 659 makes unlawful the taking "with intent to convert to his own use any goods or chattels," and not the "value" of the goods or chattels.

crime of larceny. There is no basis for either assumption.

The indictment in this case charged the defendant with embezzling and unlawfully taking fourteen beef hindquarters with intent to convert them to his own use. Larceny, as defined in the common law, generally consists of the taking and carrying away of the personal property of another with the intent to deprive the owner of his property permanently, and to convert the property to the use of someone other than the owner. 50 Am Jur 2d, Larceny, § 2. Larceny involves an unlawful trespass to the possessory interest of the owner in the property. Hence, if the owner is not in possession of the property taken, there can be no larceny. See *Shaw v. United States,* 357 F.2d 949, 957, 174 Ct.Cl. 899 (1966), app. after remand, *Gearinger v. United States,* 412 F.2d 862, 188 Ct.Cl. 512 (1969); *Smith v. United States,* 233 F.2d 744 (9th Cir. 1956); *Stewart v. United States,* 151 F.2d 386 (8th Cir. 1945). Where the taker has been entrusted with possession of the property, the taking is more aptly described as embezzlement. See 26 Am Jur 2d, Embezzlement, § 3. In this case it is clear that Waronek was entrusted with possession of the hindquarters under a contract of carriage, and that he took and converted to his own use these hindquarters while they were in his possession. Thus, the indictment correctly charged embezzlement, and the facts adduced at trial proved that charge. Consequently, even if defendant's proposed instruction correctly stated an element of the crime of larceny, there were simply no allegations in the indictment or factual basis developed at trial to warrant the giving of such an instruction.[4]

There is a more fundamental reason, however, why the requested instruction was properly refused. As Judge Doyle not-

ed, 18 U.S.C. § 659 "should be construed to protect the channels of commerce, of interstate commerce." Decisions of the Second Circuit strongly support the district court's view. As stated in *United States v. Astolas,* 487 F.2d 275, 279 (2nd Cir. 1973), cert. denied, 416 U.S. 955, 94 S.Ct. 1968, 40 L.Ed.2d 305 (1974):

"Although the legislative history of the statute sheds no light on its purpose, this Court had repeatedly held, given the all-inclusive sweep of its terminology, that Section 659 is designed by Congress to promote the flow of goods in interstate commerce, *United States v. Berger,* 338 F.2d 485 (2d Cir. 1964), cert. denied, 380 U.S. 923, 85 S.Ct. 925, 13 L.Ed.2d 809 (1965); *United States v. Thomas,* 396 F.2d 310 (2d Cir. 1968), and that the carrying out of this purpose is not to be hampered by technical legal conceptions. 338 F.2d, *supra,* at 487."

We are in accord with the views expressed by Judge Doyle and the Second Circuit. We are convinced that in enacting Section 659 Congress sought to protect interstate commerce from the type of activity engaged in by the defendant in this case. In view of the language employed and the purposes for which Section 659 was enacted, we cannot ascribe, as defendant apparently would have us, the Congressional design to limit Section 659 in applicability to the strictly defined offense of common law larceny. *Accord: United States v. DeNormand,* 149 F.2d 622 (2nd Cir. 1945), cert. denied, 326 U.S. 756, 66 S.Ct. 89, 90 L.Ed. 454 (1945).[5] Cf. *United States v. Turley,* 352 U.S. 407, 77 S.Ct. 397, 1 L.Ed.2d 430 (1957); *United States v. Guiffre,* 576 F.2d 126 (7th Cir. 1978); *United States v. Fistel,* 460 F.2d 157 (2nd Cir. 1972); *Thaggard v. United States,* 354 F.2d 735 (5th Cir. 1965), cert. denied, 383 U.S. 958, 86 S.Ct. 1222, 16 L.Ed.2d 301 (1966).

4. The intent to permanently deprive the owner of his property is not an element of the crime of embezzlement. Rather, cases indicate that the "felonious" intent with which embezzlement is committed consists of the intent to appropriate or convert the property of the owner; the simultaneous intent to return the property or to make restitution does not make the offense any less embezzlement. Cf. Annotation: 45 A.L.R.2d 623.

5. *DeNormand* broadly construed 18 U.S.C. § 409, 1940 ed., the statutory predecessor of 18 U.S.C. § 659.

In arguing that an element of the conduct proscribed by Section 659 is the taker's intent permanently to deprive the owner of the property, defendant principally relies on *United States v. Kemble,* 197 F.2d 316 (3d Cir. 1952). In reviewing the trial court's instructions on the elements of a Section 659 offense, the majority panel of the Third Circuit stated:

> "This charge is inadequate in its definition of *animus furandi,* of a specific intent to steal. In *United States v. Cohen,* 3d Cir., 274 F. 596, 597, this court defined the statutory offense of stealing an interstate shipment to be the "unlawful taking and carrying away with intent to convert to the use of the taker *and permanently deprive the owner."* [Emphasis in original].

197 F.2d at 321. See also: *United States v. Bryan,* 483 F.2d 88, 91 (3rd Cir. 1973).

Although factually distinguishable [6] from the present case, *Kemble* apparently limits the applicability of 18 U.S.C. § 659 to situations amounting to common law larceny. Because we hold that 18 U.S.C. § 659 is not limited in applicability to the offense of common law larceny, to the extent that *Kemble* adds the requirement of intent permanently to deprive the owner of his property to the elements of 18 U.S.C. § 659, we decline to follow that decision.[7]

Nor is defendant's reliance on *Morissette v. United States,* 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952), in support of his contention of any avail. In that case the Supreme Court construed 18 U.S.C. § 641 to include an element of intent · which was omitted from the crime defined in that statute. In this case, however, 18 U.S.C. § 659 clearly delineates as an element thereof an "intent to convert to [the accused's] own use."

The judgment of conviction is affirmed.

AFFIRMED.

---

6. *Kemble* involved the taking of a case of whiskey located on a platform of a shipping terminal. Possession of the case of whiskey was not entrusted to the defendant.

---

7. This opinion has been circulated among all judges of this court in regular active service. No judge favored a rehearing *en banc* on the conflict between the holding of this case and the holding of the Third Circuit in *United States v. Kemble, supra.*