UNITED STATES of America, Plaintiff-Appellee,

v.

James Marshall SHACKLEFORD (84–5995), Douglas McArthur Brooks (84–5998), Defendants-Appellants.

Nos. 84–5995, 84–5998.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 27, 1985.

Decided Nov. 29, 1985.

William G. Crabtree, Barbara Carnes (argued), London, Ky., for defendants-appellants in No. 84–5995.

Louis DeFalaise, U.S. Atty., R. Michael Murphy, Fred A. Stine, V (argued), Lexington, Ky., for plaintiff-appellee.

Allen W. Holbrook (argued) Court appointed, Owensboro, Ky., for defendants-appellants in No. 84–5998.

Before LIVELY, Chief Judge, WELLFORD, Circuit Judge, and CELEBREZZE, Senior Circuit Judge.

WELLFORD, Circuit Judge.

James M. Shackelford and Douglas Brooks, defendants, appeal from jury convictions, Brooks for embezzling food goods shipped in interstate commerce, (18 U.S.C. § 659); and Shackelford for buying and receiving the embezzled food goods (18 U.S.C. § 659). On appeal defendants raise three assignments of error: (1) erroneous jury instructions; (2) failure to voir dire jurors about alleged outside influence; and (3) imposition of restitution as part of their sentence upon conviction.

## I.

The facts in this case are, for the most part, undisputed. In December 1983, defendant Brooks, a truck driver, ran into a fellow truck driver, Thomas Hatfield. Brooks offered to help Hatfield get a load of goods to haul, and arranged for Hatfield to pick up a load the next day in Fremont, Ohio. Brooks loaned Hatfield money for fuel and the two men picked up a load of 1602 cases of food products from the H.J. Heinz Company. As was customary in the trucking industry, the dispatcher for the Heinz shipment gave Hatfield a $450 advance on his final fee of $720.[1]

After experiencing repeated mechanical problems with the truck, Brooks and Hatfield were forced to stop in Middlesboro, Kentucky to attempt repairs. There, in purchasing various essential items, the

---

1. It is apparently common practice in the trucking industry to split payment so that if there is a shortage in the goods actually delivered, then the trucking company can deduct the shortfall from the balance of payments owed.

drivers obtained credit from Yeary, a Middlesboro convenience store owner. Unable to obtain funds from the trucking company, the drivers decided to sell some of the Heinz products on the truck for money to complete the haul. Brooks told Hatfield that he knew where they could sell some goods, and Hatfield agreed to the sale.

The drivers contacted defendant Shackelford, a local store owner with whom Brooks had previously dealt. Shackelford purchased approximately 80 cases after haggling with Brooks over the price per case. Shackelford bought the goods at $5 per case, approximately half the wholesale value. When Shackelford questioned Brooks about the legality of the goods, Brooks claimed that the goods had not been stolen, but were an overload.[2]

Ten other cases of the food goods were given to Yeary by Hatfield to cover their expenses. Hatfield gave a few cases to friends as gifts and retained a few for personal use. Brooks remained in Kentucky, and Hatfield completed the haul to Jacksonville, Florida. When he arrived, Hatfield signed the necessary papers, acknowledging the absence of 127 cases. At the time of trial, 71 of these cases remained in defendant Shackelford's stockroom. According to testimony, these cases of goods could not be resold, and the shipper was forced to donate those cases to charity.

Upon conviction of defendants on their respective charges, the district court sentenced Brooks to two years with actual service of 120 days and five years probation. Shackelford was sentenced to three years with actual service of 120 days and a five year probation period. He was also fined $5,000. Both defendants were also ordered to make restitution of $470.80 to Arrow Truck Lines, the shipper, as a condition of probation (to be paid within the six months after release from custody). Finally, both defendants were ordered to perform community service one day a month within the first two years of probation. Defendants appeal these convictions.[3]

## II.

Defendant Brooks contends that the district judge erred by failing to instruct the jury that he could not be convicted of embezzlement if Brooks lacked the specific intent to deprive the owner permanently of the goods or value of the goods. Brooks argues that since he and Hatfield knew that Hatfield would be required to pay for the shortage, neither intended permanently to deprive the owner of the goods. Relying on *United States v. Kemble*, 197 F.2d 316 (3d Cir.1952), Brooks contends that he lacked the requisite intent to embezzle since he intended to return the property or its value to the owner.

■ Defendant's reliance on *Kemble* is misplaced. *Kemble* involved a larceny charge in which an instruction on specific intent was deemed a necessary element of the crime charged. Defendant Brooks, on the other hand, was charged with embezzlement that does not include intent permanently to deprive the owner of the goods as an element. *See United States v. Waronek*, 582 F.2d 1158 (7th Cir.1978). Furthermore, although the Third Circuit in *Kemble* apparently limited applicability of 18 U.S.C. § 659 to offenses amounting to common law larceny, subsequent appellate courts have rejected *Kemble*'s narrow statutory construction. *See, e.g., United States v. Coin*, 753 F.2d 1510, 1511 (9th Cir.1985); *United States v. Faulkner*, 638 F.2d 129, 130 (9th Cir.1981); *United States v. Waronek*, 582 F.2d 1158, 1161 (7th Cir.1978). We decline to follow *Kemble*.

---

**2.** According to defendant Shackelford, an "overload" meant that a trucker had paid a dock worker to put extra goods on the truck or that the trucker failed to give the cosignee all of the goods to be assigned to him.

**3.** Thomas Hatfield was also indicted and convicted under 18 U.S.C. § 659 on the embezzling charge. He received a sentence similar to Brooks and was also required to make restitution to Arrow Truck Lines, Inc. in the amount of $457.80. Hatfield did not participate in this appeal.

In construing the federal statutory theft offense, recognition of congressional intent in enacting the provision must be given considerable weight. As the Second Circuit well stated:

> Although the legislative history of the statute sheds no light on its purpose, this Court had repeatedly held, given the all-inclusive sweep of its terminology, that Section 659 is designed by Congress to promote the flow of goods in interstate commerce ..., and that the carrying out of this purpose is not to be hampered by technical legal conceptions.

*United States v. Astolas*, 487 F.2d 275, 279 (2d Cir.1973), *cert. denied sub nom. Edin v. United States*, 416 U.S. 955, 94 S.Ct. 1968, 40 L.Ed.2d 305 (1974) (citations omitted). By using broad language, Congress intended to protect the free movement of goods in interstate commerce without reliance on narrow, common law definitions of theft offenses.

As the government aptly noted in this case, the defendant's practice of reimbursing the owner for unexplained shortages "was not intended to allow truckers to purchase their cargo at cost, assume the role of distributor by selling the cargo, use it to satisfy personal debts, or to use the cargo for Christmas presents to friends and relatives." Appellee's brief at 5. Indeed, as *Faulkner* and *Waronek* indicate, 18 U.S.C. § 659 was designed to protect the channels of interstate commerce, including activities such as those engaged in by defendant Brooks.

*United States v. Waronek, supra,* presents a factual situation similar to the facts before this court. In that case, defendant was hauling beef when he made a detour to drop off some money at home and make minor repairs to his truck. 582 F.2d at 1159. Defendant butchered some of the meat for himself and his friends and sold some of it to cover his financial needs. Defendant had planned to cover the loss out of future settlements. *Id.* The *Waronek* court held:

> The intent to permanently deprive the owner of his property is not an element of the crime of embezzlement. Rather, cases indicate that the felonious intent with which embezzlement is committed consists of the intent to appropriate or convert the property of the owner; *the simultaneous intent to return the property or to make restitution does not make the offense any less embezzlement.*

*Id.* at 1161 n. 4 (emphasis added). *Accord Coin,* 753 F.2d at 1511.

We conclude that the district court did not err in its jury instructions on the question of intent.

## III.

Defendants' second assignment of error is that the district court failed to determine properly the issue of alleged juror misconduct. The alleged misconduct centers around the timing of a juror's meeting with his wife and the return of the guilty verdict. After the jury had been deliberating for approximately four hours, the court received notice that one of the jurors needed to speak with the court. The juror had planned to attend a beauty pageant in which his young daughter was a contestant:

> [W]e were aiming to leave from here and go on to Louisville. And it appears that we may be here for a while and I was wondering maybe if I could send her on to Louisville and maybe you could arrange some way of me getting down there or getting back home or something.

After conferring with counsel, the court agreed to provide transportation home for the juror and also permitted him to tell his wife of the change of plans. No attorney for any party expressed dissatisfaction with the court's decision.

The juror spoke with his wife for a few minutes before returning to the jury room. Soon thereafter, the jury reached its verdict of guilty. Defense counsel raised no objections to the timing after the verdict was read, the jurors polled on the convictions, and the jury dismissed. Subsequently, defense counsel raised the issue of possible jury misconduct. Defense counsel

moved for new trial, requested an opportunity to interview the jurors, and sought an evidentiary hearing to determine if misconduct existed from the sequence of events leading to the guilty verdict. The district court permitted the defense to interview the jurors, but denied the motion for new trial and for the evidentiary hearing.

The sixth amendment right to trial by jury is designed to ensure criminal defendants a fair trial by a "panel of impartial, 'indifferent' jurors." *Irvin v. Dowd,* 366 U.S. 717, 722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961). When possible juror misconduct is brought to the trial judge's attention he has a duty to investigate and to determine whether there may have been a violation of the sixth amendment. *See, e.g., United States v. Griffith,* 756 F.2d 1244, 1252 (6th Cir.1985); *United States v. Pennell,* 737 F.2d 521, 532–33 (6th Cir.1984), *cert. denied,* — U.S. —, 105 S.Ct. 906, 83 L.Ed.2d 921 (1985); *United States v. Corbin,* 590 F.2d 398, 400 (1st Cir.1979). Since the trial judge is in the best position to determine the nature and extent of alleged jury misconduct, his decision on the scope of proceedings necessary to discover misconduct is reviewed only for an abuse of discretion. *See, e.g., United States v. Soulard,* 730 F.2d 1292, 1305 (9th Cir.1984); *United States v. Halbert,* 712 F.2d 388, 389 (9th Cir.1983) *cert. denied,* 465 U.S. 1005, 104 S.Ct. 997, 79 L.Ed.2d 230 (1984); *United States v. Chiantese,* 582 F.2d 974, 978–79 (5th Cir.1978); *United States v. Hendrix,* 549 F.2d 1225, 1227–29 and n. 2 (9th Cir.1977).

A trial court's refusal to permit an evidentiary hearing may constitute abuse of discretion when the alleged jury misconduct involves extrinsic influences. *See United States v. Herring,* 568 F.2d 1099 (5th Cir.1978). Under the facts of this case, however, extrinsic influence was not demonstrated. Defense counsel's interview notes of jurors reflect that the juror who left the jury room to speak with his wife with court authorization had voted for guilt from the beginning of deliberations. Since that juror never wavered in his decision, he did not obtain extraneous information from his wife, or any other source, relating to the case that in any way prejudiced the defendants.

Defense counsel's notes also reflect that when the juror left the room, two jurors were then holding out against a guilty vote for Shackelford. While the juror was absent, jury deliberations continued. Soon after the juror's return, the guilty verdict was reached. During interviews of the jurors, moreover, the jurors indicated that no one was influenced by the one juror's personal problems in reaching a guilty verdict. Furthermore, each juror interviewed expressed a belief that he had fulfilled his duty fairly to decide the defendants' guilt or innocence. By advising defense counsel that they were not improperly influenced, the jurors could not have properly testified about anything further in an evidentiary hearing since Federal Rule of Evidence 606(b) only permits jurors to testify "whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror." The district judge's refusal to hold an evidentiary hearing was not an abuse of discretion under the circumstances.

### IV.

Defendants finally contend that the restitution element of their sentences was illegally imposed. Defendants argue that since the district judge mentioned to defense counsel the victim impact statements at sentencing, restitution was imposed on defendants under the Victim and Witness Protection Act (VWPA) (18 U.S.C. §§ 3579, 3580) rather than under the Federal Probation Act (18 U.S.C. § 3651). If we found that the district court imposed restitution under VWPA, the restitution aspect of the sentence might be remanded for resentencing for the detailed factfinding required by the VWPA. *See, e.g., United States v. Durham,* 755 F.2d 511, 514–15 (6th Cir. 1985); *United States v. Watchman,* 749 F.2d 616, 618–19 (10th Cir.1984).

By failing to specify under which act restitution was imposed, the district judge created a needless ambiguity,[4] but we are satisfied about the basis for this decision.

At the sentencing hearing, counsel for Brooks discussed his view of the "victim impact statement" after the initial suggestion by the court that he would be heard on this or "anything else you want to take up about this matter," after the judge's prior reference as to the "presentence report" and "the appropriate sentence." Brooks' counsel took the position not only that the VWPA was unconstitutional, but also that there was insufficient showing about "who the victim of the crime is," and the adequacy of the showing of "a loss attributable to the crime for which Mr. Brooks stands convicted." After making these objections, however, Brooks' counsel stated that there was a problem about financial resources of his client:

> Whether it be restitution under this Act [VWPA] *or under the ordinary restitution and probation, if you were to order probation and restitution as a condition of it.*

(Emphasis added).

Brooks' counsel observed, furthermore, that the VWPA

> requires a specific balancing of the financial assets and liabilities of the defendants with the proposed order of restitution. I would want to point that out to the court in making any such order *if you do.* [Emphasis added].

In imposing a probationary sentence with requirement of restitution, the court did not, as suggested by defendants' counsel, make any "specific balancing" concerning "assets and liabilities" of the respective defendants but merely split the burden of restitution between the culpable parties in an amount determined to be appropriate under the circumstances. Even after Shackelford's attorney joined in with Brooks' counsel on the objection as to "the

victim impact matter" *following* the sentence, which was made *without any reference* to that Act, the court made no further findings and no further determinations in respect to 18 U.S.C. § 3580. We assume, of course, that the experienced trial judge was familiar with VWPA and yet he made no reference to the "financial resources" of the various defendants before him, or their respective financial needs and "earning ability"[5] in imposing restitution "as a condition of probation." The judge made his decision concerning probation and restitution with the argument fresh in his mind from Brooks' counsel. He was reminded about the objections as to the sufficiency of proof as to amount of restitution and the victim to be reimbursed under the VWPA immediately *after* the imposition of sentence, yet made no change or amplification about the disposition made. These actions reinforce our conclusion that the sentence imposing restitution as a condition of probation was made under 18 U.S.C. § 3651 rather than §§ 3579 and 3580.

 It is within the trial court's sound discretion to require as a condition of probation that a criminal defendant make restitution to an aggrieved party for actual loss incurred as a result of acts for which a defendant has been convicted. *United States v. Lemire*, 720 F.2d 1327 (D.C.Cir. 1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 2678, 81 L.Ed.2d 874 (1984); *United States v. Tiler*, 602 F.2d 30 (2d Cir.1979). Under § 3651 restitution is therefore permissible as long as it does not exceed the amount of the victim's actual losses. *Higdon v. United States*, 627 F.2d 893 (9th Cir.1980).

 In ordering that restitution payments be made to Arrow Trucking Lines, Inc., the district court judge selected the proper recipient. Arrow is the aggrieved party under § 3651 because it was responsible for the stolen food products and suffered injury as a result of the offenses

---

**4.** Since the VWPA and the Federal Probation Act require different factual inquiries, the sentencing judge should specify in the record under which Act he imposes any restitution. Such

disclosure would ease determination of the propriety of ordering restitution in particular cases.

**5.** *See* 18 U.S.C. § 3580(a).

involved in the indictment. The record reveals that the recovered food products were not salable. The trial court therefore did not err in ordering defendants to make restitution payments to Arrow Trucking Lines, Inc.

Accordingly we AFFIRM in full the district court's judgment.

CELEBREZZE, Senior Circuit Judge, concurring in part and dissenting in part.

I concur in parts I, II, and III of the majority's opinion. However, since I believe that the district court improperly sentenced Shackelford and Brooks pursuant to the Victim and Witness Protection Act ("VWPA"), 18 U.S.C.A. §§ 3579, 3580 (West 1985), I respectfully dissent to part IV.

As the majority indicates, the district court never specified whether it was sentencing Shackelford and Brooks under the VWPA or the Federal Probation Act ("FPA"), 18 U.S.C. § 3651 (1982). Despite the district court's creation of this "needless ambiguity," the majority reasons that since the district court imposed the restitution order "as a condition of probation" and since the district court failed to make any of the factual findings required under the VWPA, the district court judge sentenced Shackelford and Brooks pursuant to the FPA. I believe that the sentencing transcript before this court only permits the conclusion that the district court sentenced Shackelford and Brooks under the VWPA.

The entire sentencing discussion began with Brooks' attorney objecting to any order of restitution under the VWPA; Brooks' counsel contended that the VWPA was unconstitutional on both Fifth and Seventh Amendment grounds.[1] The district court at the outset of its sentencing order rejected this argument noting that "[a]lthough it has been raised here by counsel about the question of restitution under the *victim impact statement,* I nevertheless feel that restitution should be made." (emphasis added). Further evi-

dencing that the district court imposed the sentences pursuant to the VWPA is a discussion which occurred between the district court judge and Hatfield's counsel. Hatfield's counsel contended that Hatfield should not be required to make restitution on the $475.00 advance which was paid to Hatfield for delivering the load. The district court judge agreed and responded that he did not "think that ought to be considered anyway under the *victim impact.*" (emphasis added). Finally, Shackelford's counsel, after the district court imposed sentence, asked to join in Brooks' counsel's objections to the "victim impact matter" to which the district court responded "[a]ll right."

Despite all of these references to the VWPA, which the majority concedes were made, the majority nevertheless concludes that since the district court imposed the restitution "as a condition of probation" and since the district court judge failed to make the factual findings required by the VWPA, the district court imposed the sentences pursuant to the FPA. Clearly, the FPA permits a district court to impose restitution as a condition of probation. 18 U.S.C. § 3651 (1982). Equally clear, however, is the language of Section 3579(g) of the VWPA which provides "[i]f such defendant is placed on probation or paroled under this title, any restitution ordered under this section *shall be a condition of such probation* or parole." 18 U.S.C.A. § 3579(g) (West 1985) (emphasis added); S.Rep. No. 532, 97th Cong., 2d Sess. 30, *reprinted in* 1982 U.S.Code Cong. & Ad. News 2515, 2536 ("Compliance with restitution orders is *mandated* as a condition of probation or parole." (emphasis added)). While Section 3579(g) mandates that a district court make the order of restitution "a condition of probation," no similar requirement is found in the FPA. Thus, contrary to the position of the majority, the district court's inclusion of the "as a condition of probation" language is more likely to indicate a sentence imposed pursuant to the VWPA, which requires such language be

---

**1.** On appeal, neither Brooks or Shackelford at- tacks the constitutionality of the VWPA.

used, than the FPA, which makes the use of such language permissive. Similarly, the district court's failure to make the factual findings required by the VWPA does not indicate that the district court judge sentenced Shackelford and Brooks under the FPA. The district court judge sentenced Shackelford and Brooks on October 31, 1984. Thus, the district court judge was interpreting a relatively new Act, *see* Victim and Witness Protection Act of 1982, § 9(b)(2), Pub.L. No. 97–291, 96 Stat. 1248 (1982) (restitution provisions effective to offenses occurring on or after January 1, 1983), without the benefit of this Court's decision in *United States v. Durham*, 755 F.2d 511, 514–15 (6th Cir.1985), which held that the VWPA requires district court judges to make certain factual findings before restitution is imposed. Consequently, the district court judge's failure to make any findings pursuant to the VWPA is not indicative of an intent to sentence Shackelford or Brooks under the FPA, but rather indicates that the district court judge was, quite understandably, unfamiliar with the VWPA. Accordingly, in light of the defendant's counsel's arguments concerning the VWPA, the district court's rejection of the attacks upon the constitutionality of the VWPA, the other references by the district court to the VWPA, the VWPA's requirement that a restitution order be made as a condition of probation, and, finally, the failure of the district court to ever once mention the FPA, I believe that the only reasonable conclusion is that the district court sentenced Shackelford and Brooks pursuant to the VWPA.

Having concluded that the district court sentenced Shackelford and Brooks under the VWPA, I believe, and the majority so indicates, that reversal is required. The VWPA was passed to provide for "the fair treatment of victims of Federal crimes." S.Rep. No. 532, 97th Cong., 2d Sess. 9, *reprinted in* 1982 U.S.Code Cong. & Ad. News 2515, 2515. In order to achieve this result, the Act initially puts the burden on the government to establish by a preponderance of the evidence the victim's losses. 18 U.S.C.A. § 3580(d) (West 1985); *United States v. Satterfield*, 743 F.2d 827, 840 (11th Cir.1984), *cert. denied,* — U.S. —, 105 S.Ct. 2362, 86 L.Ed.2d 262 (1985). In determining the loss which has occurred due to the crime, the district court can only order restitution for the actual uncompensated loss which the victim has suffered. 18 U.S.C.A. § 3579(e)(1) (West 1985); *Durham*, 755 F.2d at 514–15; *United States v. Watchman*, 749 F.2d 616, 619 (10th Cir. 1984) ("In the dollar determinations there is no discretion of any significant decree."). Once the victim's loss is established the burden falls upon the defendant to establish by a preponderance of the evidence his financial inability to pay for the loss. 18 U.S.C.A. § 3580(d) (West 1985). Finally, the district court must make "as to each matter controverted ... a finding as to the allegation." Fed.R.Crim.P. 32(c)(3)(D); *United States v. Palma*, 760 F.2d 475, 480 (3d Cir.1985) (district courts must make "specific findings as to the factual issues that are relevant to the application of the restitution provisions"); *Satterfield*, 743 F.2d at 841 ("The defendant facing restitution is further protected by Rule 32(c)(3)(D), which requires the trial court to make a factual finding on the record if the defendant challenges the accuracy of the information...."); *see Durham*, 755 F.2d at 514–15 (remanding for factual findings); *Watchman*, 749 F.2d at 618–19 (criticizing the use of "unverifiable reports" and remanding for further factual determinations). Viewed under these standards, the district court's order of restitution must be remanded for several reasons.

First, the district court never made an explicit finding whether Arrow, in fact, was the victim of the crimes committed by Shackelford and Brooks. Although testimony by an Arrow official indicated that Arrow was liable for the embezzled catsup, the indictment alleges that Heinz was the owner of the catsup. In these circumstances and without a specific factual finding by the district court, I do not believe that the government has established by a preponderance of the evidence that Arrow was the victim of the offense.

Second, the district court's improper calculation of the restitution award requires remanding. Although the majority indicates that the 71 cases of catsup seized at Shackelford's store were not salable, this assertion is based entirely upon a statement by an unnamed Arrow official in the presentence report. In light of the facts that up until the day the catsup was seized Shackelford was selling it and that the catsup was still in good enough condition to allow it to be given to charity, I do not believe that one hearsay statement by an interested party suffices to establish that the 71 cases of catsup were properly included in the restitution order. Nevertheless, even if the cases were properly included, the district court failed to determine if Arrow had received a charitable deduction for giving the catsup to charity. Similarly, the district court's failure to make findings pertaining to Shackelford's and Brooks' ability to pay the restitution ordered requires remand.

Last, remand is necessitated for the district court to vacate its requirement that Shackelford and Brooks do public service work. Even assuming that public service work can be ordered under the VWPA, such services may only be *substituted* for restitution payments. 18 U.S.C.A. § 3579(b)(4) (West 1985) ("if the victim ... consents, [restitution may be ordered] in services *in lieu of* money" (emphasis added)). Thus, in this case, the district court could not have imposed both restitution and community services. Further, a district court can only require a defendant to perform services if the victim agrees to such substitution. *Id.* In this case, assuming Arrow is the victim of the crimes, no evidence in the record indicates that Arrow agreed to the substitution.

Finally, even if I could agree with the majority that the defendants were sentenced under the FPA, reversal would still be required due to the district court's failure to make the factual findings required by Fed.R.Crim.P. 32(c)(3)(D). Rule 32(c)(3)(D) mandates that a district court make findings as to "each matter controverted." The district court in this case simply ignored or failed to address the factual issues controverted by defendants' counsels.

Moreover, the district court's assessment of restitution lacks support in the record. As I have previously indicated, the record in this case is insufficient to establish whether Heinz or Arrow Trucking owns the catsup, *see* 18 U.S.C. § 3651 (1982) (defendant only required to make restitution to "aggrieved party"); *Fiore v. United States,* 696 F.2d 205, 209 (2d Cir.1982) ("the defendant may not be required to pay reparations to persons not aggrieved by his crimes"), whether the 71 cases of seized catsup, in fact, were not salable, and whether a charitable deduction was received for the catsup donated to charity, *see* 18 U.S.C. § 3651 (1982) (restitution may only be ordered for "loss caused"); *United States v. Forzese,* 756 F.2d 217, 222–23 (1st Cir.1985) (remanding for computation of loss); *United States v. Tiler,* 602 F.2d 30, 33 (2d Cir.1979) ("restitution may be ordered ... only for actual damages flowing from the specific crime").

For the foregoing reasons, I would affirm in part, reverse in part, and remand this case to the district court for further proceedings.