[Cite as *State v. Gibson*, 2024-Ohio-658.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                    :

    Plaintiff-Appellee,         :

                                     No. 111440

    v.                          :

KODII GIBSON,                     :

    Defendant-Appellant.        :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** APPLICATION DENIED
**RELEASED AND JOURNALIZED:** February 21, 2024

---

Cuyahoga County Court of Common Pleas
Case No. CR-19-642539-B
Application for Reopening
Motion No. 568727

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Tasha L. Forchione, Assistant Prosecuting Attorney, *for appellee*.

Cullen Sweeney, Cuyahoga County Public Defender, and Erica B. Cunliffe, Assistant Public Defender, *for appellant*.

MARY J. BOYLE, J.:

{¶ 1} Applicant, Kodii Gibson ("Gibson"), seeks to reopen his appeal in *State v. Gibson*, 2023-Ohio-2481, 221 N.E.3d 984 (8th Dist.). For the reasons below, we deny the application for reopening.

## I.     Factual and Procedural History

{¶ 2} As we previously set forth in the direct appeal, following a nine-day trial, Gibson was found guilty of two counts of aggravated murder with capital course-of-conduct specifications, two counts of kidnapping, one count of aggravated burglary, two counts of aggravated arson, two counts of murder, and two counts of felonious assault. According to Gibson's statement to police, he, Ronald Newberry ("Newberry"), Demarcus Sheeley ("Sheeley"), and a fourth unidentified man were involved in the kidnapping and murder of a man and his young daughter. *Gibson* at ¶ 11-15. The jury recommended a sentence of life in prison with parole eligibility after 30 years for the aggravated murder charges, and the trial court imposed an aggregate sentence of life in prison with parole eligibility after 50 years. *Id*. at ¶ 41-42.

{¶ 3} In his direct appeal, Gibson's appellate counsel sought and was granted leave to file a brief in excess of the normal page limitation. In an 80-page brief, counsel raised twelve assignments of error for review:

> Assignment of Error I: The trial court erred by overruling [Gibson]'s motion to suppress statements made by [Gibson] after he was taken into custody and after he invoked his rights to counsel and to remain silent where the statements were used as evidence against [Gibson] at

his trial in violation of his rights under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and under the Constitution of Ohio, Article I, Section 10.

Assignment of Error II: The trial court erred in allowing the state to use a preemptory challenge in a racially discriminatory manner in violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and by denying the defense motion to dismiss an impaneled juror who disclosed mid-trial that he had violated the court's order and conducted an internet search in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution.

Assignment of Error III: The court erred by denying the joint request for mistrial where the court had continued proceedings without jurisdiction after an appeal had been filed.

Assignment of Error IV: The trial court erred by denying the motions for mistrial due to discovery violations or to continue the trial in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution.

Assignment of Error V: The trial court erred by admitting video and photo evidence over defense objection and limiting the testimony of [Gilbert] which contrary to Evid.R. 401, 402, 403, 803 and 901, and in violation of [Gibson]'s state and federal constitutional rights to due process and a fair trial.

Assignment of Error VI: The court erred by including jury instructions over defense objection on natural consequences language on causation, including consciousness of guilt for concealing crime language, and by denying a jury instruction on unanimity requested by the defense.

Assignment of Error VII: The court erred by denying [Gibson]'s motion to declare R.C. 2929.03 unconstitutional.

Assignment of Error VIII: The sentence recommended by the jury and imposed by the trial court were not proportional and failure to conduct a proportionality analysis when imposing a criminal sentence violates the Eighth and Fourteenth Amendments to the United States Constitution.

Assignment of Error IX: The trial court erred when it denied [Gibson]'s motion for acquittal under Crim.R. 29 because the state failed to present sufficient evidence to establish beyond a reasonable doubt the elements necessary to support the convictions.

Assignment of Error X: [Gibson]'s convictions are against the manifest weight of the evidence.

Assignment of Error XI: [Gibson]'s sentence is contrary to law because consecutive sentences are not supported by the record.

Assignment of Error XII: [Gibson] was deprived of his constitutional rights to due process, a fair trial, and the effective assistance of counsel where Agent Kunkle was allowed to offer opinion testimony without objection.

*Gibson* at ¶ 43. On July 20, 2023, we issued an opinion that overruled these assigned errors and affirmed the convictions.

{¶ 4} On October 18, 2023, Gibson timely filed an application to reopen his appeal. Gibson now claims that counsel was ineffective for not advancing three additional proposed assignments of error:

Proposed Assignment of Error I: The trial court erred when it refused to allow defense counsel to conduct additional voir dire of Juror 7 given inconsistencies between his disclosure to the court that he had done an internet search about the case and other statements he made during the jury selection process.

Proposed Assignment of Error II: The trial court erred when it failed to grant trial counsel's motion to dismiss the death specifications in this case because they were improperly and unconstitutionally applied by the prosecution.

Proposed Assignment of Error III: The trial court erred when it barred the defense from presenting the jury with information that the state intended to remove the capital punishment specifications on Gibson's more culpable codefendants while continuing to seek Gibson's death sentence.

The state timely filed a brief in opposition to Gibson's application for reopening on November 17, 2023.

## II. Law and Analysis

{¶ 5} App.R. 26(B) provides for a special procedure to hear a claim of ineffective assistance of appellant counsel; a right recognized in *State v. Murnahan*, 63 Ohio St.3d 60, 584 N.E.2d 1204 (1992). This rule establishes a two-step process whereby a defendant can argue that appellate counsel was ineffective under the standard for the effective assistance of counsel established by *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *State v. Leyh*, 166 Ohio St.3d 365, 2022-Ohio-292, 185 N.E.3d 1075, ¶ 17, 19. "The application for reopening 'shall be granted if there is a genuine issue as to whether the applicant was deprived of the effective assistance of counsel on appeal.' App.R. 26(B)(5). The burden is on the applicant to demonstrate a 'genuine issue' as to whether there is a 'colorable claim' of ineffective assistance of appellate counsel." *Id.* at ¶ 21, quoting *State v. Spivey*, 84 Ohio St.3d 24, 25, 701 N.E.2d 696 (1998). Under *Strickland*, an applicant must show that appellate counsel was deficient for failing to raise an issue presented in the application, and had counsel done so, there is a reasonable probability of success. *Spivey* at 24. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland* at 694.

{¶ 6} Appellate attorneys are often faced with the dilemma of deciding which issues to raise in an appeal given the limited nature of the arguments that can effectively be addressed within the confines of the length of briefing allowed. They

must often winnow out weaker arguments to focus on those that present the strongest possibility for success. Here, appellate counsel sought and was granted leave to file an 80-page brief that raised 12 assignments of error. The Supreme Court of Ohio has recognized this issue in a similar case: "[the] allegedly ineffective appellate counsel raised twenty-two assignments of error on appeal. 'Counsel could have reasonably decided they could not add * * * more issues without "burying good arguments * * * in a verbal mound made up of strong and weak contentions."'" *State v. Allen*, 77 Ohio St.3d 172, 173, 672 N.E.2d 638 (1996), quoting *State v. Campbell*, 69 Ohio St. 3d 38, 53, 630 N.E.2d 339 (1994), quoting *Jones v. Barnes*, 463 U.S. 745, 753, 103 S. Ct. 3308, 77 L. Ed. 2d 987 (1983). Therefore, appellate counsel enjoys some degree of latitude in the choices made in their professional judgment and "judges should not second-guess reasonable professional judgments and impose on appellate counsel the duty to raise every 'colorable' issue." *State v. Reynolds*, 8th Dist. Cuyahoga No. 106979, 2019-Ohio-4456, ¶ 12.

## A. Voir Dire of Juror 7

{¶ 7} In the direct appeal, Gibson's counsel raised an assignment of error challenging the trial court's decision to retain Juror 7 after the juror self-reported misconduct. Gibson now claims that appellate counsel was ineffective in the manner in which he raised this assignment of error. In the direct appeal, appellate counsel argued that the trial court erred in not excusing Juror 7. We overruled the assignment of error, finding that "there is nothing in the record to suggest that Juror 7's ability to perform his duty is impaired." *Gibson*, 2023-Ohio-2481, 221 N.E.3d

984, at ¶ 65. Gibson now claims that counsel should have argued that the court erred in not allowing further voir dire of Juror 7. However, this argument is contradicted by the record.

{¶ 8} Juror 7 wrote a letter to the trial judge informing the court that the juror had conducted a prohibited Google search. The court read the letter into the record and then questioned Juror 7. The court also allowed the parties to question Juror 7. The trial court did not limit Gibson's questioning of Juror 7 at that time. Gibson's trial counsel asked a few questions of Juror 7 after the court's and the prosecutor's questioning, and then counsel said "thank you," indicating that she was done with questioning. (Tr. 3814.) The court then excused the juror and heard arguments from the parties. *Id.* The court allowed Gibson to question Juror 7 and the record does not indicate that questioning of Juror 7 was curtailed in any manner during this initial hearing.

{¶ 9} Later, Gibson filed a renewed motion to remove Juror 7. The renewed motion, filed December 9, 2021, did seek additional voir dire of the juror in the alternative. However, the motion did not present additional evidence of extrinsic influence. At the hearing held on this motion, Gibson's attorney reargued that Juror 7 failed to abide by the court's admonition, and Juror 7 may have given misleading answers in his juror questionnaire and during his voir dire. (Tr. 4887.) However, at no point during arguments on the motion did Gibson seek to further question Juror 7.

{¶ 10} Gibson claims the appellate counsel was ineffective for failing to argue that trial court had a duty to allow additional questioning of Juror 7, relying on *United States v. Davis*, 177 F.3d 552 (6th Cir.1999). There, the Sixth Circuit stated:

> "When possible juror misconduct is brought to the trial judge's attention he has a duty to investigate and to determine whether there may have been a violation of the [constitutional guarantee]." [*United States v. Shackelford*, 777 F.2d 1141, 1145 (6th Cir.1985).] On review, we examine the district judge's decision on juror misconduct for abuse of discretion. *See United States v. Copeland*, 51 F.3d 611, 613 (6th Cir.1995). Such an abuse may be found when a district court refuses "to permit an evidentiary hearing * * * when the alleged jury misconduct involves extrinsic influences." *Shackelford*, 777 F.2d at 1145.
>
> We have recently noted that "[a] new trial will not be necessary every time a question of juror partiality is raised. Where a colorable claim of extraneous influence has been raised, however, a '*Remmer* hearing'" must be held to afford the defendant an opportunity to establish actual bias. *United States v. Herndon*, 156 F.3d 629, 635 (6th Cir.1998) (referencing *Remmer v. United States*, 347 U.S. 227, 98 L.Ed. 654, 74 S.Ct. 450 (1954)). At that hearing, the defendant bears the burden of proving actual juror bias, and no presumption of prejudice arises merely from the fact that improper contact occurred. *See United States v. Zelinka*, 862 F.2d 92, 96 (6th Cir.1988).

*Id.* at 557.

{¶ 11} Here, the trial court conducted the hearing that *Remmer* provides for and allowed questioning of the juror by, and heard arguments from, the parties. The renewed motion did not present new or additional claims of extraneous influence. The claims presented in the renewed motion were inferences from previously known information that Gibson could have questioned the juror about at the previous hearing but did not.

{¶ 12} Gibson's counsel questioned the juror during the first hearing and did not seek additional voir dire of the juror during the second hearing. We have already determined in the direct appeal that the trial court did not abuse its discretion in failing to remove Juror 7, and Gibson's proposed assignment of error in this application lacks support in the record.

{¶ 13} Therefore, appellate counsel cannot be ineffective for failing to couch the assignment of error in the terms Gibson now claims was required.

## B. Failure to Dismiss the Death Specifications

{¶ 14} In his next proposed assignment of error, Gibson argues that appellate counsel was ineffective for not asserting that the trial court erred in denying two motions to dismiss the death specifications that were charged in this case. Gibson argues that "[i]nvoking the death penalty specifications in this case was unconstitutional and arbitrary and the court should have dismissed them." Application for Reopening at 8. Gibson's claim rests on the belief that he was not the principal offender, did not commit acts of murder with prior calculation or design, and that his codefendants did not face the death penalty. He makes a broader argument that he should not have been charged with capital specifications in the first place because others charged with similar crimes did not face a death penalty trial.

{¶ 15} The death penalty was not imposed. The proposed assignment of error challenging the trial court's failure to dismiss the death specifications offers little in the way of prejudice beyond speculation. Gibson states that he was under increased

pressure as a result of the death specifications, and the state charged the death specifications in an attempt to compel Gibson to cooperate in the prosecution of other culprits.

{¶ 16} Further, death penalty specifications for aggravated murder, found in R.C. 2929.04, enumerate the charges of aggravated murder that are eligible for the death penalty in Ohio. Some of the subsections of R.C. 2929.04(A) require that the defendant be the principal offender or commit acts with prior calculation and design, and some do not. R.C. 2929.04(A)(5) provides for the imposition of the death penalty for aggravated murder if, "[p]rior to the offense at bar, the offender was convicted of an offense an essential element of which was the purposeful killing of or attempt to kill another, or the offense at bar was part of a course of conduct involving the purposeful killing of or attempt to kill two or more persons by the offender." This subsection, colloquially referred to as the course-of-conduct specification, does not include language that exists in other subsections limiting its application to only principal offenders or those acts committed with prior calculation and design. Contrast R.C. 2929.04(A)(7) ("The offense was committed while the offender was committing * * * [one of any enumerated crimes], and either the offender was the principal offender in the commission of the aggravated murder or, if not the principal offender, committed the aggravated murder with prior calculation and design.").

{¶ 17} The Supreme Court of Ohio has examined the course-of-conduct specification and has determined that there is no requirement that it is limited to a

principal offender as Gibson argues. *State v. Herring*, 94 Ohio St.3d 246, 252, 762 N.E.2d 940 (2002). The *Herring* Court rejected the argument that because the jury did not find Herring to be the actual killer in any of three murders, he could not be guilty of the specification under R.C. 2929.04(A)(5). *Id. See also State v. Dean*, 146 Ohio St.3d 106, 2015-Ohio-4347, 54 N.E.3d 80, ¶ 185.

{¶ 18} Further, the claim that Gibson's codefendants, or other defendants, did not face the death penalty when he did is a claim of selective prosecution. The Supreme Court of Ohio has adopted the following test for claims of selective prosecution:

> "To support a defense of selective or discriminatory prosecution, a defendant bears the heavy burden of establishing, at least prima facie, (1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights."

*State v. Flynt*, 63 Ohio St. 2d 132, 134, 407 N.E.2d 15 (1980), quoting *United States v. Berrios*, 501 F.2d 1207, 1211 (2d Cir.1974). *See also State v. Lawson*, 64 Ohio St.3d 336, 346, 595 N.E.2d 902 (1992).

{¶ 19} Gibson does not point to or satisfy this test. Gibson's codefendants, Sheeley and Newberry, were similarly charged with death penalty specifications. In fact, all three were named in the same indictment with the same death specifications. Sheeley accepted a plea agreement that resulted in the dismissal of the capital specifications. *Gibson*, 2023-Ohio-2481, 221 N.E.3d 984, at ¶ 3, fn. 2.

Sheeley's case does not present a claim of selective prosecution. *State v. Getsy*, 84 Ohio St.3d 180, 203-204, 702 N.E.2d 866 (1998) (finding that plea bargains offered to codefendants that removed capital offenses did not establish a claim of selective prosecution). Gibson's application for reopening and the record in this case also show that Gibson was offered a plea deal that removed the death specifications. *Gibson* at ¶ 7. Therefore, Gibson and Sheeley were not treated dissimilarly in relation to the capital specifications.

{¶ 20} Newberry's capital specifications were dismissed, but as Gibson's application acknowledges, nothing in the record details why those specifications were dismissed. Additionally, nothing in the record establishes that Gibson was singled out for prosecution based on an invidious motive or that the state's actions were based on some impermissible consideration. Gibson argues the state charged Gibson with capital offenses in this case in order to force his cooperation with the prosecution of others. This is merely speculation on Gibson's part that does not meet Gibson's burden for the test established in *Flynn*. This supposition is also unsupported in the application and the record before this court. As a result, appellate counsel could have appropriately determined, in their professional judgment, that this claim would be better raised in postconviction proceedings because the claim necessarily relies on information outside of the present appellate record. *See State v. Lenard*, 8th Dist. Cuyahoga Nos. 105342 and 105343, 2018-Ohio-4847, ¶ 12.

{¶ 21} Gibson's claim that appellate counsel was ineffective for failing to argue that the trial court erred in not dismissing the course-of-conduct death specifications is contrary to well-established precedent that this provision does not require the defendant to be the principal offender or commit acts with prior calculation and design. Gibson's argument that the death penalty specifications were arbitrarily charged in this case or amount to selective prosecution also fail. Therefore, appellate counsel was not ineffective for failing to advance this claim.

### C. Evidence of Capital Specifications of a Codefendant

{¶ 22} Finally, Gibson argues that appellate counsel was ineffective for failing to assign an error challenging the trial court's decision to prevent Gibson from introducing evidence that his codefendants did not face the death penalty.

{¶ 23} This proposed assignment of error involves the exclusion of evidence proffered in mitigation. "The admission or exclusion of relevant evidence lies within the sound discretion of the trial court." *State v. Dixon*, 101 Ohio St.3d 328, 2004-Ohio-1585, 805 N.E.2d 1042, ¶ 67, citing *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987), paragraph two of the syllabus. An abuse of discretion occurs when a court exercises "its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463, ¶ 35. Pursuant to R.C. 2929.04(C), a defendant has "great latitude in the presentation of evidence" in mitigation of the imposition of the death penalty. However, a court may still exclude evidence that is irrelevant to the jury's sentencing decision. *Dixon* at ¶ 67. "'Relevant evidence' means

evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401.

{¶ 24} In *Dixon*, the Supreme Court of Ohio ruled that a court did not err in excluding evidence of other capitally indicted offenses in Lucas County that a defendant sought to offer in mitigation because "[t]he admission of such evidence would have invited the jury to engage in speculative analysis of the sentencing disparity that is not authorized by law." *Id*. at ¶ 68. This type of proportionality analysis is generally reserved for reviewing courts. *See* R.C. 2929.05(A).

{¶ 25} R.C. 2929.05(A) mandates appellate review of death sentences. The statute provides for, among other things, two types of review that have been somewhat conflated in the briefing in this case. The reviewing court, generally the Supreme Court of Ohio, must determine (1) whether the sentence is excessive or disproportionate to the penalty imposed in similar cases, known as proportionality review, and also (2) must independently weight the aggravating circumstances against the mitigating factors to determine if the sentence of death is appropriate. R.C. 2929.05(A). *See also State v. Stumpf*, 32 Ohio St.3d 95, 98, 512 N.E.2d 598 (1987).

{¶ 26} During the hearing on the motion before the trial court, the state argued against the admission of evidence related to the treatment of codefendants based on citations to cases dealing with proportionality review. And, indeed, the Supreme Court of Ohio has held that the lesser sentences of codefendants are not

factors to be considered when reviewing the proportionality of a sentence of death. *See, e.g., State v. Myers*, 154 Ohio St.3d 405, 2018-Ohio-1903, 114 N.E.3d 1138, ¶ 228. In another case, the court reasoned that as between codefendants that had separate trials, "[t]he life sentence given to [the codefendant] is the verdict of a jury in a separate trial. Proportionality review in the cause *sub judice* does not require a reweighing of the aggravating circumstances against the mitigating factors in [the codefendant's] case." *Stumpf* at 108.

{¶ 27} But proportionality review is different from a weighing of the aggravating circumstances against the mitigating factors in which the jury and the reviewing court must engage. The Supreme Court of Ohio has considered disparate treatment between codefendants as a mitigating factor under R.C. 2929.04(B)(7) when independently weighing the aggravating circumstances against the mitigating factors. *State v. Green*, 66 Ohio St.3d 141, 153, 609 N.E.2d 1253 (1993). There, the court considered as a mitigating factor that a codefendant was allowed to plead guilty to involuntary manslaughter and aggravated robbery, and the capital charges were dismissed. The court afforded this factor little weight in mitigation, however. *Id.*

{¶ 28} Further, the Supreme Court of Ohio has recognized that the United States Supreme Court has implicitly determined that a codefendant's sentence could be considered as a nonstatutory mitigating factor. *State v. Getsy*, 84 Ohio St.3d 180, 208, 702 N.E.2d 866 (1998), citing *Parker v. Dugger*, 498 U.S. 308, 111 S.Ct. 731, 112 L.Ed.2d 812 (1991). The Sixth Circuit has described *Parker's* holding as not

constitutionally required, but permissive. *Middlebrooks v. Bell*, 619 F.3d 526, 540 (6th Cir.2010) citing *Parker*. *See also Meyer v. Branker*, 506 F.3d 358, 375-376 (4th Cir.2007) (holding that states may, but are not constitutionally required to, permit consideration of such evidence as mitigating); and *Beardslee v. Woodford*, 358 F.3d 560, 579 (9th Cir. 2004) (same).

{¶ 29} More recently, the Supreme Court of Ohio stated a lesser sentence of a codefendant "is entitled to consideration as a nonstatutory mitigating factor." *State v. Dean*, 146 Ohio St.3d 106, 2015-Ohio-4347, 54 N.E.3d 80, ¶ 322, citing *Getsy* at 208-209. However, the court went on to state that "'[d]isparity of sentence does not justify reversal when the sentence is neither illegal nor an abuse of discretion.'" *Id.* at ¶ 322, quoting *State v. Jamison*, 49 Ohio St.3d 182, 191, 552 N.E.2d 180 (1990).

{¶ 30} Based on the most recent pronouncement by the Supreme Court of Ohio, there is no probability of success had appellate counsel raised the issue in the direct appeal. While some case law supports Gibson's argument that the disparate treatment of codefendants may be permissible evidence in mitigation, Gibson was not subjected to the death penalty and any claim that this evidence should have been presented to the jury as a mitigating factor that weighs in favor of a non-death sentence is moot.

{¶ 31} Instead, Gibson argues that had the jury been presented with facts related to the charges of the codefendants, the jury may have recommended a lesser

sentence[1] such as life with parole eligibility after 25 years.[2]  But whether Gibson's codefendants were charged with capital offenses does not impact the choice the jury faced when deciding among the non-death sentences available under the statute. The sentences of the other codefendants were unknown at the time of the evidentiary ruling, so what Gibson sought to introduce and what the jury could have considered was that the codefendants did not face the death penalty.  The fact that Sheeley and Newberry, codefendants who Gibson argues were more culpable, did not face the death penalty may be relevant to a jury's consideration of whether to recommend a sentence of death, but that information has little relevance once the jury decided to recommend a sentence other than death.[3]  As a result, this proposed assignment of error does not present legitimate grounds for ineffective assistance of counsel.

---

[1] Pursuant to R.C. 2929.03(D)(2)(c), with limited exception, in this case when a jury does not recommend a sentence of death, the trial court must impose the life sentence recommended by the jury.

[2] This argument is intertwined with an attack on the sentence that was imposed in this case.  Absent a constitutional challenge, R.C. 2953.08 provides a limited means to challenge a sentence.  R.C. 2953.08(D)(3) states that a sentence imposed for aggravated murder pursuant to R.C. 2929.04 is not subject to review under this statute, and this court may not review the sentence.  *State v. Campbell*, 8th Dist. Cuyahoga No. 103982, 2016-Ohio-7613, ¶ 16, citing *State v. Porterfield*, 106 Ohio St.3d 5, 2005-Ohio-3095, 829 N.E.2d 690.

[3] Success on this proposed assignment of error may also subject Gibson to an increased sentence, not just a reduced sentence at a resentencing hearing.  Appellate counsel, in their professional judgment, may have decided the risk did not outweigh the potential for a five-year reduction from a sentence of life with parole eligibility after serving 50 years when one of the potential penalties Gibson could face is life without the possibility of parole.

This proposed assignment of error does not present a colorable claim of ineffective assistance of appellate counsel.

_____
MARY J. BOYLE, JUDGE

EILEEN A. GALLAGHER, P.J., and
SEAN C. GALLAGHER, J., CONCUR