**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Frederick Tupper SAUSSY, III,**
**Defendant-Appellant.**

**Nos. 85–5663, 85–5966.**

United States Court of Appeals,
Sixth Circuit.

Submitted Aug. 1, 1986.

Decided Oct. 1, 1986.

Rehearing and Rehearing En Banc
Denied Nov. 13, 1986.

---

Denis H. Mark, Waller, Mark and Allen, Denver, Colo., William C. Waller, Jr., Kevin D. Allen, for defendant-appellant.

John W. Gill, U.S. Atty., Chattanooga, Tenn., John P. MacCoon, Connie V. Malone, for plaintiff-appellee.

Before KEITH and GUY, Circuit Judges, and BALLANTINE, District Judge.*

RALPH B. GUY, Jr., Circuit Judge.

Defendant, Frederick Tupper Saussy, III, appeals his conviction for willful failure to file a federal income tax return for the year 1977, in violation of 26 U.S.C. § 7203. Defendant argues on appeal that the prosecution was barred by the statute of limitations, and also challenges four jury instructions given by the district court below. Finding no merit to any of the defendant's contentions, we affirm.

## I.

On July 31, 1984, a three-count information was filed charging Saussy with willful failure to file federal income tax returns for the years 1977, 1978, and 1979, in violation of 26 U.S.C. § 7203. After several continuances, trial was actually commenced on January 24, 1985, but was aborted due to the disruptive behavior of the defendant. The defendant was held in criminal contempt and the trial was rescheduled.

On March 21, 1985, a superseding indictment, charging the same crimes as were alleged in the July 31, 1984 information, was returned. Trial was held on the indict-

---

* Honorable Thomas A. Ballantine, Jr., United States District Court, Western District of Kentucky, sitting by designation.

ment on May 29–30, 1985, and the defendant was convicted upon count one and acquitted upon counts two and three of the indictment. Subsequent to trial, the defendant was sentenced to one year in prison and fined $10,000. Costs of prosecution were also assessed in the amount of $2,823.33. Notices of appeal were timely filed as to the conviction and as to the costs awarded.

## II.

*Statute of Limitations*

Simply put, defendant's argument on the statute of limitations issue is that although the information originally filed was within the six-year statutory period set forth in 26 U.S.C. § 6531, it did not toll the statute because it was an "unverified" information. Defendant further argues that the statute was not tolled by the filing of the information; therefore, when the superseding indictment was filed after the six-year limitation period had run, it could not relate back to the previously filed information nor could it be construed to have been filed during a period of time when the statute was tolled. Defendant offers no relevant support for these arguments.

■ To begin with, there is no doubt that the filing of an information in this type of case would toll the running of the statute of limitations. Title 26, U.S.C. § 6531 provides that in order to institute an appropriate prosecution under the Internal Revenue laws an indictment must be returned or an information filed within the statutory period. Rule 7(a), Fed.R.Crim.P., specifically provides that an offense of this nature which is punishable by imprisonment for a term of one year or less may be prosecuted by information. Defendant at least impliedly concedes this point, but contends further that this only occurs if the information is "verified" and that the information filed here was "unverified." By "unverified" defendant appears to mean an information that is not supported by some type of affidavit or by some prior determination of probable cause.

There is no requirement in either the statutes or the court rules for the verification of an information. The only requirement is that the information be signed by the attorney for the government. Fed.R. Crim.P. 7(c)(1). *See also United States v. Pickard*, 207 F.2d 472, 474 (9th Cir.1953).

■ Defendant's argument that when an information is filed it affords the defendant an opportunity for a probable cause hearing is incorrect. As stated in *United States v. Funk*, 412 F.2d 452, 455 (8th Cir.1969):

> The use of an information as a formal criminal charge found recognition as early as the beginning days of the Nation. Act of April 30, 1790, C. 9 § 31; 1 Stat. 119. *Albrecht v. United States*, 273 U.S. 1, 47 S.Ct. 250, 71 L.Ed. 505 (1927). Today, by use of the information for lesser crimes (and as to felonies where indictment is waived) the issues of probable cause and guilt become merged and tried together. The law has traditionally and constitutionally discriminated between safeguards guaranteed for felonies and those involved in lesser offenses. *Duke v. United States*, 301 U.S. 492, 57 S.Ct. 835, 81 L.Ed. 1243 (1937).

Defendant's argument on this point primarily results from his misapplication of three cases, *United States v. Greenberg*, 320 F.2d 467 (9th Cir.1963); *Jaben v. United States*, 381 U.S. 214, 85 S.Ct. 1365, 14 L.Ed.2d 345 (1965); and *United States v. Millican*, 600 F.2d 273, (5th Cir.1979), *cert. denied*, 445 U.S. 915, 100 S.Ct. 1274, 63 L.Ed.2d 598 (1980). The issue involved in both *Greenberg* and *Jaben* was whether a *complaint* lacking in probable cause would be sufficient to toll a statute of limitations. Both courts correctly found that it would not. Both cases are distinguishable, however, in that a complaint under the Federal Rules of Criminal Procedure and the applicable statutes is not sufficient to stop the running of the statute of limitations. This is because a complaint does not constitute a formal charge upon which trial may proceed. On the other hand, an information is itself the formal charge and trial may be

had upon it without more. *Millican* involves the showing that is required for the issuance of a warrant or summons after an indictment or information has been filed. It does not, as defendant suggests, hold that a probable cause hearing is required in connection with the institution of criminal charges by an information. In fact, *Millican* states directly to the contrary:

> A probable cause determination is not a constitutional prerequisite to filing of the information itself, *Gerstein v. Pugh*, 420 U.S. [103] at 125 n. 26, 95 S.Ct. 854 [869 n. 26], nor have the Federal Rules of Criminal Procedure, in effect since 1946, been construed to require probable cause in an information in order to state a prosecutable offense.

600 F.2d at 276 (citations omitted). *Millican* does state in what appears to be *dicta* that where a summons is issued after the filing of an indictment or information, there should be some sort of probable cause shown as a foundation for the issuing of the summons. *Millican* is specific, however, in holding that if that is not done and the defendant is ultimately convicted "he cannot upset that conviction on the argument that no probable cause was shown prior thereto." *Id.* at 277–78.[1]

This prosecution was appropriately instituted by information within the period of limitations. The information need not be verified and it does not entitle the defendant to a probable cause hearing. The only question remaining is whether the subsequent indictment filed after the running of the statutory limitations period resulted in a time-barred prosecution.

█ It is interesting to note, although not determinative of the issue, that the only reason the government proceeded to indictment in this case was to satisfy the defendant's demands for a probable cause hearing. The returning of an indictment by the grand jury, of course, conclusively determines probable cause. The indictment returned was in the same language and charged the identical offense as did the earlier information. Although there appears to be no case dealing specifically with this point, the cases are legion which hold that when an indictment supersedes a previous indictment it relates back to the time the earlier indictment was filed. *See, e.g., United States v. Friedman*, 649 F.2d 199 (3d Cir.1981); *United States v. Grady*, 544 F.2d 598 (2nd Cir.1976). *See also United States v. Brewer*, 681 F.2d 973 (5th Cir. 1982) (where the government first proceeded by indictment and then subsequently dismissed the indictment and proceeded by information in a case in which they could have proceeded by information in the first instance).

We can discern no principled reason why, if an indictment relates back to an earlier filed indictment, a subsequently filed indictment should not relate back to an earlier filed information.[2] The charges brought in the indictment were identical to those in the information. The concerns generally underlying statutes of limitations have to do with placing a defendant on notice of the charges brought against him before those charges are presumptively stale. Here, there is no doubt that the defendant was fully apprised of the charges against him before the statute had run, and that he was apprised of those charges in precisely the same language that was used in the subsequent indictment. Under these circumstances, the defendant suffered no prejudice, and defendant's subsequent conviction ratified the United States Attorney's and the grand jury's earlier determination of the existence of probable cause.

---

1. There is no doubt that one served with a summons deemed defective may challenge that summons by moving to quash. By no means does this equate, however, to the proposition that cases started by information entitle the defendant to a probable cause hearing.

2. This, of course, holds true providing the earlier filed information was appropriate. If, for example, the government had initially proceeded by information in a case that could only be instituted by indictment, the rule might well be different. Here, we are not presented with that problem since it is clear that this offense could be prosecuted by information and the indictment was merely to satisfy defendant's request on the issue of probable cause.

### III.

Defendant also contends that four different instructions given to the jury were erroneous and prejudicial.

#### A. *Instruction on "Willfulness"*

■ Defendant contends that the court's instruction on willfulness was confusing and a misstatement of the law. First, it does not appear to the court that defendant has properly preserved this objection. Fed. R.Crim.P. 30 requires that counsel are to submit to the court written requests for instructions, as counsel did in this case. The court shall then inform counsel of its proposed action upon the requests prior to their arguments to the jury, as the court did in this case. Then, "no party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." We do not find in the transcript of the proceedings below any objection by defendant to this instruction. (TR. 8, 445–455.) Nonetheless, pursuant to Fed. R.Crim.P. 52, this court must consider plain errors or defects affecting substantial rights, even though defendant may not have properly preserved his objection.

Upon review, we find no plain error. First, although defendant contends that the instruction was a misstatement of the law, his entire argument is directed to his contention that the instruction was confusing and could have been simpler. He does not state in what way the instruction was a misstatement. Second, it is well settled that a court is not required to give an instruction in the language a defendant requests, as long as the jury is fully and fairly instructed in the general charge. *United States v. Akins*, 372 F.2d 291, 293 (6th Cir.1967). *See also United States v. Bizzard*, 674 F.2d 1382, 1389 (11th Cir. 1982); *United States v. Coast of Maine*, 557 F.2d 905, 909 (1st Cir.1977). We note with approval the statement by the Ninth Circuit in *United States v. James*, 576 F.2d 223, 226–27 (9th Cir.1978):

We review a claim of error relating to jury instructions from a unique vantage point. First, neither party, including a criminal defendant, may insist upon any particular language.... On the contrary, the trial judge is given substantial latitude in tailoring the instructions so long as they fairly and adequately cover the issues presented.... Equally important, the propriety of a given instruction, or the failure to give a particular instruction, is not viewed in the abstract; rather, the adequacy of the entire charge taken in the context of the whole trial is our proper scope of inquiry.... Challenges which merely pertain to the trial judge's language or formulation of the charge are reversible only for an abuse of discretion.

(Citations omitted.) We find that the lower court's instruction on willfulness was a proper statement of the law and was not confusing, particularly in the context of the instructions as a whole.

#### B. *Instruction on Disagreement with the Law*

■ The court gave an instruction which stated that a defendant's disagreement with the law or his belief that such a law is unconstitutional does not constitute a defense of good faith, misunderstanding, or mistake. Defendant contends that there was no issue as to whether he was justified in his violation of the law or whether he intentionally violated the law because of a disagreement with it. Rather, the issue was whether defendant in good faith believed that what he was doing was in compliance with the law. Defendant contends that this instruction implied to the jurors that what defendant had done was, in fact, a violation of the law.

We first find that defendant's disagreement with the law was made an issue in the case by defendant himself. Defense counsel questioned a number of witnesses, in particular Robert Peters, concerning defendant's questioning of the tax laws and his study of those laws and the Constitution. Peters testified that he believed defendant was sincere in his beliefs. Thus,

we find that the jury was properly given an instruction concerning this issue raised by defendant. Second, we do not find that the instruction implies that defendant was in violation of the law, particularly when the instructions are looked at as a whole. "In evaluating the adequacy of jury instructions, they must be taken as a whole." *Blackwell v. Sun Electric Corp.*, 696 F.2d 1176, 1181 (6th Cir.1983).

### C. *Instruction on Tax Returns*

■ Defendant challenges the following instruction:

A document which does not contain sufficient information relating to the taxpayer's income from which the tax can be computed is not a return within the meaning of the Internal Revenue Code and the Regulations thereunder.

(TR. 8, 506.) Defendant contends that this instruction stated that as a matter of law the tax returns filed by defendant were not tax returns and that the jury *must* find that the government had proved this element of the offense. Defendant contends the question of whether or not the defendant filed a tax return is a question of fact to be decided by the jury.

First, we do not find from the transcript that defendant preserved this objection for appeal, pursuant to Fed.R.Crim.P. 30. Second, we find that the above statement dealt with a legal question rather than a question of fact, and that the court properly instructed the jury as to a legal requirement. Additionally, as discussed above, jury instructions are to be read as a whole. The next sentence in the charge reads, "Whether any document submitted by the defendant constitutes tax returns' is a matter for the jury to decide." The court properly stated the law respecting the definition of a return, and left it to the jury to decide whether defendant had properly filed a return.

### D. *Instruction on Exercise of Privilege Against Self-Incrimination*

■ The contested instruction is as follows:

Now, a taxpayer may not, however, avoid the filing of required income tax returns by claiming his privilege against self-incrimination unless the taxpayer in good faith believes that if he furnishes required information on tax returns, the disclosure of such information will subject him to incrimination and possible prosecution for violation of criminal laws.

The Fifth Amendment privilege or right does not give any person the right to withhold required information on a return concerning items the disclosure of which would not incriminate him.

You should bear in mind that disclosure of income from legitimate activities in which no criminal act was involved would not constitute such self-incrimination.

If you find that the Defendant in good faith believed that providing the information called for would violate his right against self-incrimination, even if that belief was a mistaken one, then you must find that he did not act willfully. If you find that he did not act willfully, then you must return a verdict of not guilty. (TR. 8, 509.) The defendant states that a good faith claim of privilege against self-incrimination, although erroneous, is a defense to the element of willfulness which is necessary for a conviction under 26 U.S.C. § 7203. Defendant contends that the instruction was an incorrect statement of the law because "it is only necessary that defendant in good faith believe that his exercise of his fifth amendment privilege is proper under the law," and it "is *not* necessary that he actually believe that the information which he furnishes would in fact incriminate him."

Defendant cites three cases which are inapposite to the proposition he asserts, as they concern alleged misunderstanding of the tax law. That was not alleged to be the case here. Defendant makes this argument because it became clear at trial that he did not believe that filling out his tax returns would leave him open to criminal prosecution. He did write on those returns

that he was remaining silent pursuant to his fifth amendment privilege, but at trial he made the following statement: "I understood that if you wanted to exercise the fifth amendment because you didn't want to tell the government anything, and you felt there was a question as to whether or not you were required, it was improper not to file a return at all, because that would be failing to file." (TR. 352.) Here, defendant merely asserted that he did not want to tell the government anything, not that he was in fear of criminal prosecution. Throughout his testimony he continued to speak about "if" someone wanted to manipulate his tax return or "conceivably" use the information on his return against him. (*See* TR. 8, 367 and 371.) His only fears seem to relate to release of information by the government and possible repercussions against his wife's family in Puerto Rico. Defendant testified that he is merely a songwriter with royalties, and that he does not have any income from criminal activity. "I would have to say in all respect it probably would not have incriminated me, because I would have filed a truthful return." (TR. 8, 368.) What defendant seems to be asserting is that he could assert the fifth amendment to protect him from revealing information that he thought might be harmful to him in some way, not that he thought the information would incriminate him. That is not the law.

In *Garner v. United States,* 424 U.S. 648, 655, 96 S.Ct. 1178, 1183, 47 L.Ed.2d 370 (1976), the Court held: "Despite its cherished position, the Fifth Amendment addresses only a relatively narrow scope of inquiries. Unless the government seeks testimony that will subject its giver to criminal liability, the constitutional right to remain silent absent immunity does not arise." The Court did go on to find that if a defendant has a good faith belief that the information he gives will subject him to criminal liability, however erroneously, his use of the fifth amendment does not constitute a willful failure to file a tax return. However, that good faith belief must relate to a fear of criminal prosecution. In *United States v. Sullivan,* 274 U.S. 259, 264, 47 S.Ct. 607, 71 L.Ed. 1037 (1927), Mr. Justice Holmes held that a taxpayer "could not draw a conjurer's circle around the whole matter by his own declaration that to write any word upon the government's blank would bring him into danger of the law." Similarly, in *United States v. Johnson,* 577 F.2d 1304 (5th Cir.1978), the court found:

> The Fifth Amendment privilege protects the erroneous taxpayer by providing a defense to the prosecution if the jury finds that the claim, though erroneous, was made in good faith.... Three principles may be distilled from the authority: (1) the privilege must be claimed specifically in response to particular questions, not merely in a blanket refusal to furnish any information; (2) the claim is to be reviewed by a judicial officer who determines whether the information sought would tend to incriminate; (3) the witness or defendant himself is not the final arbitor of whether or not the information sought would tend to incriminate. *See generally Albertson v. SACB,* 382 U.S. 70, 86 S.Ct. 194, 15 L.Ed.2d 165 (1965); *Hoffman v. United States,* 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118 (1951)....

577 F.2d at 1311. Defendant in the present case made a blanket refusal to furnish any information and admits himself that the information sought does not tend to incriminate. We further note that the instruction reviewed and approved by the *Johnson* court is almost identical to the one given in the present case. *Johnson,* 577 F.2d at 1310 n. 3. We find that the instruction given was a proper statement of the law.

## IV.

Finally, defendant filed a separate appeal as to the costs assessed against him by the district court. However, he has presented no argument to us as to why those costs are improper. We find that the court below properly assessed costs of prosecution for violation of 26 U.S.C. § 7203 as mandated by that statute. Further, the district judge gave careful consideration to defendant's motion to reduce the costs as present-

ed by the government and found several of defendant's objections well taken, reducing the assessment from $6,360.80 to $2,823.33. We find this final figure to be that required by the statute.

The judgment of the district court is AFFIRMED.