1 F.3d 1243
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
William MUNCY, Jr., Defendant-Appellant.
 No. 92-6045.
 United States Court of Appeals, Sixth Circuit.
 Aug. 5, 1993.
 
 Before: MILBURN and BOGGS, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 William Muncy, Jr. appeals from his conviction and sentence on drug and firearms offenses claiming errors both at trial and at sentencing. Finding no merit in any of Muncy's assignments of error, we affirm the district court.
 
 
 2
 * On July 17, 1991, members of the Kentucky State Police Special Response Team (SRT) went to an area of Leslie County, Kentucky known as Tantrough Hollow. The SRT was looking for marijuana, as earlier aerial surveillance had identified marijuana patches in the area.
 
 
 3
 When the officers arrived at the Tantrough area, two of them noticed a three-wheel all-terrain vehicle, and several of them heard sounds coming from the hill on which they had started hiking. The officers requested helicopter support. Trooper Sullivan and Sergeant Provence went along a trail in the general direction of the sounds. As they were following the trail, they saw a pit bull and immediately stopped. Shortly thereafter, William Muncy, Jr. appeared from around a bend in the trail. He noticed the officers and pointed a loaded 9mm handgun at them.
 
 
 4
 Sullivan, armed with a machine gun, identified himself as a police officer and ordered Muncy to the ground. Muncy dropped the weapon but did not get down on the ground. When Sullivan forced Muncy to the ground, the dog turned to Provence as though to attack. Provence, also armed with a machine gun, killed the dog.
 
 
 5
 Sullivan stayed with Muncy, and Provence secured the immediate area. Other officers arrived. None of the officers saw any signs of other people in the area. The SRT patrol dog was brought in to search, and he gave no indication that there was any other person in the area.
 
 
 6
 The SRT discovered 142 marijuana plants in a patch near where Muncy was arrested. Muncy claims that the distance between the plants and himself was approximately 40 yards. By contrast, Sullivan claims Muncy was "just feet" from the plants. The officers also discovered that Muncy was on the only trail or path leading to or from the patch, and that the marijuana had been freshly hoed and fertilized.
 
 
 7
 When Muncy was lying face down on the ground, two troopers videotaped him on the ground and taped the path going along the side of the mountain leading toward the marijuana. The officers said that they intended to use the tape for training: it was not preserved as evidence in the case, and was shortly thereafter recorded over.
 
 
 8
 Muncy was indicted for manufacturing marijuana, in violation of 21 U.S.C. Sec. 841(a)(1), using a firearm during a drug trafficking crime, in violation of 18 U.S.C. Sec. 924(c)(1), and possession with the intent to distribute marijuana, in violation of 21 U.S.C. Sec. 841(a)(1).
 
 
 9
 A three-day jury trial began on May 4, 1992. Muncy testified in his own defense. He contended that he was not particularly close to the marijuana at the time he was arrested. Furthermore, notwithstanding any physical proximity, he was not involved in either the manufacture or the distribution of the drug. He said that the marijuana was all the responsibility of a man named Todd Burton.
 
 
 10
 Muncy also claimed that Sullivan had physically abused him during the arrest. While recognizing that this is a collateral issue, Muncy insisted it went to the credibility of the officers, as they all denied either abusing him or seeing anyone else abuse him.
 
 
 11
 The jury returned verdicts of guilty on the marijuana manufacturing and firearm counts, and acquitted Muncy on the charge of possession with intent to distribute. He was sentenced to 78 months' incarceration on the manufacturing charge, a consecutive 60-month period on the firearm count, a three-year term of supervised release, and was fined a mandatory special assessment of $100. An amended judgment filed on August 5 also required that he participate in a program for substance abusers as a condition of his supervised release.
 
 
 12
 On appeal, Muncy claims that the failure to preserve the videotape violated his due process rights, that certain favorable hearsay testimony should have been admitted, that certain booking photographs taken at the jail should not have been admitted, that his request of the FBI to be allowed to carry a gun when he was allegedly cooperating with the Bureau should not have been admitted, and that he should not have received a two-level sentencing enhancement for obstruction of justice.
 
 II
 
 13
 The government has a duty to preserve evidence that exculpates the defendant when the exculpatory value is apparent before the evidence is destroyed and when the evidence is of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means. California v. Trombetta, 467 U.S. 479 (1984). To rise to a due process violation, however, there must be bad faith on the part of the police. Arizona v. Youngblood, 488 U.S. 51 (1988).
 
 
 14
 The police failure to preserve the videotape may have been inadvisable, but in this instance it was not prejudicial: there was no process due Muncy that he did not receive as a result of the tape's erasure. Muncy claims the videotape would have provided three important pieces of evidence: 1) it would have shown that he was not near the marijuana, 2) it would have shown the extent of the cultivation, and 3) it would have shown him grimacing, thus evidencing his physical abuse. In addition to the videotape, still photographs of the area were taken and introduced into evidence. Muncy has given the court no reason to believe that the still photographs did not represent the condition of the area at least as well as the videotape. Nor can he be sure his distance from the marijuana was recorded.
 
 
 15
 Second, even were the videotape to show Muncy grimacing, it would be a great stretch to infer, when he is face down on the ground surrounded by machine-gun wielding police officers and the carcass of his pit bull, that the grimace is the result of being physically abused rather than any of a number of other possible emotions. Nor would the tape have shown any alleged injuries, as he was clothed at the time of the arrest and he contends on appeal only that he suffered bruised ribs.
 
 
 16
 Even were Muncy correct in all these particulars, however, he still fails in his effort to show bad faith in the police destruction of the tape.
 
 III
 
 17
 Evidence is generally inadmissible if it is not relevant. Fed.R.Evid. 402. Furthermore, hearsay evidence is generally inadmissible, unless it falls within one of the itemized exceptions or has other particularized guarantees of trustworthiness. Fed.R.Evid. 802-04. The trial court is granted substantial discretion in its rulings on admissibility of evidence, and its decision will not be overturned absent a finding of abuse of that discretion.
 
 
 18
 Muncy stated that Lillie and Donnie Bagley were willing to testify about statements allegedly made to them by a man named Todd Burton. Burton was the man who Muncy contended owned and was responsible for the marijuana. Lillie Bagley's father was a police officer in Leslie County. Burton allegedly once said to the Bagleys that in the event Officer Bagley brought the National Guard into Elkhorn, a particular section of Leslie County, he, Burton, would kill Bagley. Elkhorn is approximately 4 1/2 miles, as the crow flies, away from Tantrough Hollow.
 
 
 19
 Muncy insists that the testimony was exculpatory because the jury would have reasoned from it that Burton was responsible for the marijuana charged to Muncy. To reach that conclusion, the jury would first have to infer that Burton was involved in marijuana production in the area. The jury would then have to note that Elkhorn is in the same general area of Leslie County as Tantrough. The jury would then have to leap to the conclusion that it was Burton who owned the marijuana that Muncy was charged with. Finally, to compound the improbability, the jury then would have to decide that, because Burton might have been involved in marijuana production in Tantrough Hollow, Muncy could not have been.
 
 
 20
 We decline to accept the invitation to require a district judge to admit evidence this tangential to the defendant's theory of the case. The evidence is not relevant, and we therefore need not reach the contention that, although it was admittedly hearsay, it should have been admitted under one of the exceptions to the hearsay rule.
 
 IV
 
 21
 The trial court admitted photographs of Muncy that were taken at the jail several hours after his arrest. It was not error either to admit the photographs, or to fail to give the jury a limiting instruction, particularly in the absence of a request for such an instruction by the defense. United States v. Saussy, 802 F.2d 849 (6th Cir.1986), cert. denied, 480 U.S. 907 (1987).
 
 
 22
 The photographs were proffered by the government to support the credibility of the government witnesses and to rebut Muncy's claim that he had been abused. Still photographs of Muncy taken several hours after he allegedly sustained blows from an officer might well have been more probative of his physical condition than the videotape evidence that he sought to have admitted. In the intervening period of time, any bruising might have become more evident, and given Muncy a much better basis from which to impeach the officers' credibility. While the fact that Muncy was wearing a shirt would have admittedly decreased the probative value of the photographs if he was only claiming blows to the body, the photographs would still have shown his general condition. In any event, any error there was in admitting the photographs was harmless.
 
 V
 
 23
 The trial court admitted testimony that Muncy had asked to be allowed to carry a gun during the time that he was allegedly cooperating with the FBI. Muncy once again expresses his confidence in the jury's creativity, as he insists that the only reasonable conclusion the jury would have made was that he had to ask for special permission to carry a weapon because he had earlier been convicted of a felony. We disagree.
 
 
 24
 The trial court did not err in refusing to presume that the jury indulged in such speculation. The evidence was admitted for the purpose of showing that Muncy's cooperation with law enforcement was not purely altruistic, but rather that he sought (unsuccessfully in that instance) to obtain benefits for himself. Furthermore, his complaint on the lack of a limiting instruction is rejected here too, as he did not raise it below and has shown no prejudice.
 
 VI
 
 25
 Finally, Muncy contends he should not have received a two-level enhancement for testifying untruthfully at trial. We review for abuse of discretion. United States v. Bennett, 975 F.2d 305, 308 (6th Cir.1992). Muncy says that the jury had a difficult time reaching a decision, as evidenced by the time it took to deliberate. Therefore, his testimony must have been credible.
 
 
 26
 The judge clearly did not believe Muncy's stated reason for carrying a weapon--that he had the weapon to shoot snakes. That the judge believes Muncy perjured himself is a relevant consideration to an enhancement for obstruction of justice. The duration of the jury's deliberations is not dispositive as to whether the judge believes that perjury was committed. In any event, it is pure speculation as to why the jury took the time it did. Once again, there is no error.
 
 
 27
 We AFFIRM the judgment of conviction and the imposition of the sentence on Muncy.