**UNITED STATES of America Plaintiff–Appellee**

v.

**Dr. Glenn AHEE, Defendant–Appellant,**

**No. 99–1991.**

United States Court of Appeals, Sixth Circuit.

Feb. 15, 2001.

Before DAUGHTREY and CLAY, Circuit Judges; RUSSELL, District Judge.[*]

RUSSELL, District Judge.

Defendant, Dr. Glenn Ahee, appeals his conviction by the district court of two counts of filing a false tax return, in violation of 26 U.S.C. § 7206. On appeal, Dr. Ahee alleges that the trial court committed numerous evidentiary errors, that it empaneled an improper jury, that it permitted the use of a constitutionally insufficient indictment, that it allowed the Internal Revenue Service to improperly utilize administrative summonses, that the trial judge gave improper jury instructions, and that the prosecution engaged in improper conduct during its closing argument. For the reasons set forth below, we AFFIRM the district court on all grounds.

Dr. Glenn Ahee is a chiropractor who has been in private practice since June of 1986. He shared an office with another chiropractor, and operated the business under the name Shorepointe Chiropractic. Dr. Ahee charged a fee for his services, and reported these fees as income on his federal individual income tax returns until 1990. Dr. Ahee employed Robert Jeanguenat, a CPA and childhood friend, to complete his tax forms.

In 1990, Dr. Ahee stopped filing individual tax returns after watching a video tape given to him by his mother. The individual on the video instructed viewers that the Internal Revenue Code ("IRC") did not specifically require people to file returns or pay income tax based on the returns.

Ahee contacted the man on the video, and began purchasing books, acquiring information, and reading court cases suggested by the individual. He also purchased a copy of the IRC. After doing case research, including *United States v. Mitchell*, 403 U.S. 190, 91 S.Ct. 1763, 29 L.Ed.2d 406 (1971) and *United States v. Ballard*, 535 F.2d 400 (8th Cir.1976), Dr. Ahee sent letters to the IRS stating he was not subject to its jurisdiction and demanding a refund of $6,440. He also demanded that the IRS explain why he was required to pay taxes or file a return. Ahee claimed that the IRC did not specifically impose a tax upon his "activity." As a result, he was allegedly not required to pay taxes on monies generated by his "activity" of chiropractic services. Finally, he claimed he did not report any "income" because income is not defined by the IRC.

In June of 1990, Dr. Ahee applied for a mortgage to purchase a residential house. On his mortgage application, he listed "gross monthly income" of $2,300 and $4,000 per month in "other income." One year later, he created a trust called the Shorepointe Chiropractic Trust, and transferred all of his assets, including his interest in Shorepointe Chiropractic and the home he bought in June 1990, into the trust. His CPA informed him that whatever money came into the trust had to be reported to the IRS on the trust return. Dr. Ahee admitted that $43,324 reported in the 1991 trust return as "outside services" went into his personal accounts. He also admits that he did not report these monies on his 1991 personal federal tax return.

Dr. Ahee's CPA became concerned about these questionable financial activi-

[*] Honorable Thomas B. Russell, United States District Judge for the Western District of Kentucky, sitting by designation

ties. The CPA prepared a letter dated March 5, 1992, in which he detailed his relationship with Dr. Ahee in 1991. The letter verifies that the CPA only prepared a trust return, and did not prepare an individual return for 1991. The CPA also told Dr. Ahee that the trust relationship would not save Dr. Ahee on his taxes. The CPA hand delivered the letter to Dr. Ahee, and had Dr. Ahee sign indicating its receipt.

In March of 1993, Special Agent Sanderson of the IRS Criminal Investigation Division conducted an interview of Dr. Ahee. Dr. Ahee admitted that he had not filed returns for 1990 or 1991. Special Agent Sanderson also met with CPA Jeanguenat, who informed Sanderson that he had prepared a 1990 personal return for Dr. Ahee and forwarded it to Dr. Ahee for his signature. The CPA indicated that Dr. Ahee had an income of $83,478 for 1990, and that he assumed Dr. Ahee had signed and filed the tax return. CPA Jeanguenat also provided Special Agent Sanderson with a copy of the "tax organizer" prepared by Dr. Ahee to assist Jeanguenat in preparing the 1990 return.

From this tax organizer, Special Agent Sanderson was able to identify bank accounts and other assets. He obtained records for these accounts, which revealed that Dr. Ahee had deposited numerous checks, cash and insurance proceeds given to Dr. Ahee as payment for chiropractic services. The IRS prepared summaries of the activities in these accounts, with which Dr. Ahee agreed. Utilizing these summaries, along with canceled checks and other records provided by Dr. Charles Schiemke, Dr. Ahee's partner in Shorepointe Chiropractic, the IRS prepared estimated taxes for Dr. Ahee. After subtracting expenses, exemptions and other permitted deductions, the Service calculated that Dr.

Ahee's "total income" was $38,944.96 for 1990 and $50,555.83 for 1991.

In April of 1995, Dr. Ahee filed two form 1040 federal individual income tax returns for the years 1990 and 1991. Each of these returns were filed with all entries completed "0," except the 1990 return demanded the $6,440 refund (presumably for taxes paid in 1989). Attached to these returns was a two paged typed addendum in which Dr. Ahee stated that he was not required to pay taxes. Dr. Ahee claimed that he decided to file these "zero" returns after attending a tax seminar in early April 1995.

In 1996, a federal grand jury returned a two count indictment for making a false return under 26 U.S.C. § 7206(1), based on the two "zero" returns. On January 22, 1999, Dr. Ahee was convicted in a jury trial for violating the statute, and now appeals his conviction. Dr. Ahee mounts seven challenges to his conviction, with differing standards of review. We address each challenge separately below.

## DISCUSSION

### I. JUROR EXCLUSION AND INFLUENCE

Dr. Ahee claims that the court below improperly excluded all jurors who had previous negative experiences with the IRS and who believed or had knowledge that the IRS had engaged in improper activities. He also alleges that the judge erred in not conducting a post-trial hearing concerning alleged influence on one of the jurors. These arguments are in error.

A proper challenge to juror exclusion requires a showing that (1) the excluded group is a distinctive group in the community; (2) the identified group is under-represented in the jury venire from which jurors are selected, and that (3) this under-representation is due to systematic

exclusion of the group in the jury selection process. *See Duren v. Missouri,* 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed. 579 (1979). Review of whether or not jurors were properly excluded, or whether or not the trial judge conducted "proceedings necessary to discover misconduct is reviewed only for an abuse of discretion." *United States v. Shackelford,* 777 F.2d 1141, 1145 (6th Cir.1985). *See also Marks v. Shell Oil Co.,* 895 F.2d 1128, 1129 (6th Cir.1990). Appellant points to no evidence in the record to support his claim. Nor can he demonstrate any record of objecting to the exclusion during the course of voir dire. Rather, it is just a bald, sweeping generalization indicating dissatisfaction with the jury panel. Such "issues averted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *McPherson v. Kelsey,* 125 F.3d 989, 995 (6th Cir.1997).

Appellant secured an affidavit from one of the jurors, and two "witnesses," that he and other jurors were motivated to find Ahee guilty out of fear of the IRS. Dr. Ahee also alleges the affidavit shows the jury preferred a finding of guilt on the lesser-included misdemeanor charge, but "through fear entered verdicts of guilty as to felonies."

Since Fed.R.Evid. 606(b) "only permits jurors to testify 'whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror," ' a party seeking to have the trial court conduct a so-called *Reemer* hearing must demonstrate that external influences impacted the jury process. *United States v. Shackelford,* 777 F.2d 1141, 1145 (6th Cir.1985). *See also United States v. Herndon,* 156 F.3d 629, 635 (6th Cir.1998)(only "[w]here a colorable claim of extraneous influence has been raised" should a court conduct a

*Reemer* hearing). "[E]xtraneous influence on a juror is one derived from specific knowledge about or a relationship with either the parties or their witnesses. This knowledge or relationship is such that it taints the deliberations with information not subject to a trial's procedural safeguards." *Herndon,* 156 F.3d at 636.

Fear of the IRS is not the type of external influence contemplated by Fed. R.Evid. 606. A juror's possible subjective belief concerning the IRS is not "specific knowledge" sufficient to "taint the deliberations." This Court's cases that have found extraneous influence, and thus the necessity of a hearing, involved prior business relationships among private parties that ended with animosity (*Herndon* ), or improper direct communication with the jury. *See United States v. Walker,* 1 F.3d 423 (6th Cir.1993)(highlighted transcripts inadvertently sent to the jury room); *United States v. Cooper,* 868 F.2d 1505 (6th Cir.1989)(prosecutor's notes ended up in the jury room). These cases highlight the policy behind Fed.R.Evid. 606 that only objective external forces, not the juror's own "mental processes" may be evaluated by the trial judge in a *Reemer* hearing.

Moreover, Appellant states everyone that had a negative experience with the IRS was already excluded. Thus, all potential jurors who have objective reasons for "fearing" the IRS were not on the actual jury. Dr. Ahee cannot both argue undue influence on the jury, and at the same time argue that all potential jurors who had a prior "knowledge or relationship" with IRS were systematically excluded from the jury panel. *Herndon,* 156 F.3d, at 636.

## II. SUPPRESSION OF TAX RETURN

Appellant contends that his two "zero" tax returns should have been sup-

pressed as violative of his 5th Amendment privilege against self incrimination. "When reviewing the denial of a motion to suppress, we review the district court's findings of fact for clear error and its conclusions of law de novo." *United States v. Hurst*, 228 F.3d 751, 756 (6th Cir.2000)(citing *United States v. Navarro–Camacho*, 186 F.3d 701, 705 (6th Cir. 1999)); *United States v. Walker*, 181 F.3d 774, 776 (6th Cir.1999), *cert. denied*, 528 U.S. 980, 120 S.Ct. 435, 145 L.Ed.2d 340 (1999).[2] Nonetheless, the evidence must be evaluated " 'in the light most likely to support the district court's decision.' " *Id.* (quoting *Navarro–Camacho*, 186 F.3d, at 705). There is nothing to suggest that the district court committed reversible error in its evaluation of Dr. Ahee's motion to suppress.

"The central standard for the application of the Fifth Amendment privilege against self incrimination is whether the claimant is confronted by substantial and 'real,' and not merely trifling or imaginary, hazards of incrimination." *United States v. Argomaniz*, 925 F.2d 1349, 1353 (11th Cir.1991)(quoting *Marchetti v. United States*, 390 U.S. 39, 53, 88 S.Ct. 697, 705, 19 L.Ed.2d 889 (1968)). A taxpayer may not, in the words of Justice Holmes, "draw a conjurer's circle around the whole matter by his own declaration that to write any word upon the government's blank would bring him into danger of the law." *United States v. Saussy*, 802 F.2d 849, 855 (6th Cir.1986)(quoting *United States v. Sullivan*, 274 U.S. 259, 264, 47 S.Ct. 607, 71 L.Ed. 1037 (1927)).

"[T]he privilege must be claimed specifically in response to particular questions, not merely in a blanket refusal to furnish any information; (2) the claim is to be reviewed by a judicial officer who determines whether the information sought would tend to incriminate; (3) the witness or defendant himself is not the final arbitor of whether or not the information sought would tent to incriminate." *Saussy*, 802 F.2d at 855 (quoting *United States v. Johnson*, 577 F.2d 1304, 1311 (5th Cir. 1978)).

▇▇▇ The cases that have upheld the exercise of the Fifth Amendment privilege typically involve criminal activity, or suspected criminal activity. They do not involve blanket refusals to provide any information whatsoever on an IRS 1040. Indeed, as noted above, this Court requires the privilege to be claimed "specifically in response to particular questions." There is nothing to indicate that occurred in this case.

## III.  INDICTMENT DEFECTS

The indictment in this case read as follows:

> That on or about April 17, 1995, in the Eastern District of Michigan, Southern Division, defendant Glenn M. Ahee did wilfully make and subscribe a false return, statement and document, purporting to be an individual income tax return for 1990 [and 1991], which contained a written declaration that it was made under the penalty of perjury and was filed with the Internal Revenue Service, which return, statement and document he did not believe to be true and correct as to every material matter, in that he prepared and filed a form 1040 return which reported zero total income, where-

---

2.  This is a different standard than the typical "abuse of discretion standard" prescribed by the Supreme Court for evidentiary decisions. *General Electric Co. v. Joiner*, 522 U.S. 136, 141, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997).

This is due to the strong constitutional considerations involved in evaluating a suppression claim under the Fourth and Fifth Amendments. *See Hurst*, 228 F.3d, at 756 n. 1.

as, as he knew, he earned substantial total income in 1990 [and 1991], all in violation of 26 U.S.C. § 7206(1).

Appellant claims this indictment was constitutionally insufficient to inform him of what constituted the criminally prohibited conduct. He also claims that the district court was without jurisdiction to hear the case due to defects in the indictment These contentions are without merit.

■■■■ An "indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against him which he must defend, and second, enables him to plead an acquittal or conviction in bar of future prosecutions of the same offense." *Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974). "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished .'" *Id.* (citation omitted). As to the question of jurisdiction, this Court applies de novo review. *See Hedgepeth v. Tennessee,* 215 F.3d 608, 611 (6th Cir. 2000).

■■■■ Section 7206(1) provides that "[a]ny person who willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter shall be guilty of a felony..." 26 U.S.C. § 7206(1). "Section 7206 prohibits making or assisting the making of any materially false return, statement, claim or other document under the internal revenue laws.... Under a reasonable construction of the statute, a person of ordinary intelligence could un-

derstand that it criminalizes lying on any form or document filed with the IRS." *United States v. Cochrane,* 985 F.2d 1027, 1031 (9th Cir.1993). Under the statute the government need not prove either intent to evade payment of taxes nor even the existence of any taxable income, merely that the person who signed the form lied about the matters it contained. *See United States v. Taylor,* 574 F.2d 232 (5th Cir. 1978).

■■■■ Any return that "omits material items necessary to the computation of income is not 'true and correct' within the meaning of section 7206. If an affirmative false statement be required, it is supplied by the taxpayer's declaration that the return is true and correct, when he knows it is not." *Siravo v. United States,* 377 F.2d 469, 472 (1st Cir.1967). Finally, "under § 7206(1), the Government [does] not need to establish an actual tax deficiency in a § 7206(1) prosecution. The burden rests on the taxpayer to disclose his receipts and claim his proper deductions." *United States v. Ballard,* 535 F.2d 400, 404 (8th Cir.1976).

■■■■ Appellant avers that since the Code does not define income, he did not know that monies he received were income, so he violatéd the Code, if at all, in good faith. While it is true that the "general term income is not defined in the Internal Revenue Code," all of the monies received by Dr. Ahee clearly meet the definitions found in IRC § 61. *Ballard,* 535 F.2d, at 404. The money he received as compensation for patient services falls squarely within IRC § 61(a)(1): "Compensation for services, including fees, commissions, fringe benefits, and similar items." The monies could similarly be seen as "gross income derived from business" or "dividends" or "distributive share of partnership gross income" or finally "income

form an interest in an estate or trust" under the trust scheme he established in 1991. *See* 26 U.S.C. § 61(a)(2), (a)(7), (a)(13) and (a)(15).

Moreover, there is no indication that Dr. Ahee did not know that the monies he received as a result of providing patient services constituted "income." He had paid income taxes for several years, and his accountant had always established Dr. Ahee's level of taxable income from sums Dr. Ahee received as compensation for chiropractic services. His argument that he did not know that the sums he received constituted "income" is belied by his prior payment of income taxes based on those sums, and his aforementioned continued reliance on those sums as "income" when seeking loans or engaging in other financial activities.

## IV. ADMINISTRATIVE SUMMONS

Dr. Ahee challenges the use of administrative summonses by the IRS to gather information which led to his indictment. He argues that the trial court should have conducted a so-called *Genser* hearing regarding the suppression of information obtained pursuant to the administrative summonses. *See United States v. Genser,* 582 F.2d 292 (3d Cir.1978), *cert. denied,* 444 U.S. 928, 100 S.Ct. 269, 621, 62 L.Ed.2d 185 (1979). He also argues that the use of administrative summonses was improper since the summonses were issued under the auspices of a criminal investigation in violation of *United States v. Lasalle National Bank,* 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978). Finally, Dr. Ahee alleges that the summons were issued due to impermissible selective prosecution in response to legitimate First Amendment-protected activity.

■■■ The decision of whether to hold a *Genser* hearing lies within the sound discretion of the trial court. This court will "defer to the district court's discretion to decide if an evidentiary hearing on the question of enforcement of a summons is warranted." *United States v. Gertner,* 65 F.3d 963, 969 (1st Cir.1995)(quoting *Fortney v. United States,* 59 F.3d 117, 121 (9th Cir.1995)). *See also Hintze v. IRS,* 879 F.2d 121, 126 (4th Cir.1989). Dr. Ahee has presented nothing during the course of this appeal to suggest the trial court abused its discretion in not holding a *Genser* hearing regarding the IRS summonses used during the investigation.

■■■ At the trial court, Dr. Ahee argued that the Service failed to demonstrate the proper grounds for the use of the administrative summonses. The IRS may justify the use of the administrative summons upon a demonstration of good faith; that is:

that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the Commissioner's possession, and that the administrative steps required by the [Internal Revenue] Code have been followed—in particular, that the "Secretary or his delegate," after investigation, has determined the further examination to be necessary and has notified the taxpayer in writing to that effect.

*United States v. Stuart,* 489 U.S. 353, 109 S.Ct. 1183, 1188, 103 L.Ed.2d 388 (1989)(quoting *United States v. Powell,* 379 U.S. 48, 57–58, 85 S.Ct. 248, 254–55, 13 L.Ed.2d 112 (1964)). Also, under *LaSalle,* the Service cannot obtain information pursuant to the administrative summons process "after the IRS recommends prosecution to the Department of Justice, or after the IRS has abandoned, in an institutional sense, the pursuit of civil tax determina-

tion or collection." *Genser*, 582 F.2d, at 309. Dr. Ahee argues that the IRS has not met the standard of good faith set out above since it violated the admonition of *LaSalle* concerning criminal prosecutions.

▇ Dr. Ahee notes that the IRS first became aware of him through a 1992 criminal investigation of the Pilot Connection Society, a tax protest organization operating in the western United States. While this is true, at the time there was no ongoing criminal investigation of Dr. Ahee himself. In fact, no criminal charges were brought against Dr. Ahee until after he made the false statements on his 1990 and 1991 1040s that he filed in April of 1995. Special Agent Sanderson stated in a sworn affidavit that all administrative summonses were issued in 1993 and 1994, well before Special Agent Sanderson completed his report recommending criminal sanctions, and at least 2 years before the matter was tendered to the Department of Justice for prosecution. Moreover, the crime at issue in the current case did not occur until April of 1995, at least a year after the summonses were issued. Given this fact, and the fact the summonses were utilized to gather evidence, not justify a previous determination to prosecute, the trial court did not err in concluding the IRS had a legitimate purpose for the use of administrative summonses under 26 U.S.C. § 7206.

▇ Dr. Ahee also alleges that the IRS did not properly follow the procedure for giving a taxpayer the opportunity to quash a subpoena under 26 U.S.C. 7609(a)(1). This statute gives a taxpayer up to 20 days to move to quash a subpoena investigating his or her affairs. Dr. Ahee only identifies one summons potentially violative of this provision. On April 8, 1993, the Northeast Catholic Credit Union was served with a summons demanding it produce records relating to Dr. Ahee on April 26, 1993, only 18 days later.

Nonetheless, the record reveals that Dr. Ahee received notice of the summons on April 9, 1993, but did not make any motion to quash until July 8, 1998, more than five years later. Despite the violation of the statutory provision, the district court properly denied any hearing on the motion to suppress/quash the information obtained with the summons. Not only did Dr. Ahee not present any justification for waiting over five (5) years to attempt to quash the summons, he presented no basis in fact that would justify an order to quash, nor did he demonstrate any information which the Service obtained with the summons that would be offered at trial.

▇ Likewise, Dr. Ahee is entitled to no relief on the basis of selective prosecution. He argues that while he was subjected to criminal prosecution for filing "zero returns." other tax payers only received civil penalty assessments, or, in some cases, actual tax refunds. He argues the difference in treatment arose from his association with a tax protester group, and his exercise of First Amendment rights to criticize the government.

▇ "The government has broad discretion in determining who will be charged and with what crime." *Wayte v. United States*, 470 U.S. 598, 607, 105 S.Ct. 1524, 1530, 84 L.Ed.2d 547 (1985). Thus, in order to succeed upon a selective prosecution claim, a criminal defendant must establish both that the government harbored a discriminatory intent and that the challenged prosecutorial policy had a discriminatory effect. *See United States v. Jones*, 159 F.3d 969, 976 (6th Cir.1998). A demonstration of discriminatory intent requires the defendant to "show that 'the government's discriminatory selection of him has been invidious or in bad faith, i.e., based on such impermissible consider-

ations such as race, religion, or the desire to prevent the exercise of his constitutional rights.'" *United States v. Mullins*, 22 F.3d 1365, 1373 (6th Cir.1994)(quoting *United States v. Hazel*, 696 F.2d 473, 474 (6th Cir.1983)). As to discriminatory effect, "a defendant must show that similarly situated individuals ... were not similarly prosecuted." *Jones*, 159 F.3d, at 977.

Dr. Ahee has failed to adduce any evidence that either his membership in the Pilot Connection Society was a factor in the government's decision to prosecute, or that he was treated differently from "similarly situated" individuals. While he presents hearsay testimony that other people who filed "zero returns" were not prosecuted, he never outlines any evidence suggesting these individuals had similar incomes, expenses, deductions or exemptions that would have produced knowing, material misstatements of income on a level with those made by Dr. Ahee. He has simply produced no evidence to sustain a finding of "selective" prosecution.

## V. POST–TRIAL MOTIONS FOR DISMISSAL

In his motions for post-trial relief, Dr. Ahee alleged a litany of evidentiary and other discretionary ruling abuses by the trial court. The district court denied Dr. Ahee's motions in all regards. "Although we review the district court's denial of the motion[s] de novo, we must affirm its decision if the evidence, viewed in the light most favorable to the government, would allow a rational trier of fact to find the defendant guilty beyond a reasonable doubt." *United States v. Canan*, 48 F.3d 954, 962 (6th Cir.1995)(citing *United States v. Montgomery*, 980 F.2d 388, 393 (6th Cir.1992)).

■ First, he alleges that the district court improperly admitted evidence of other bad acts in violation of Fed.R.Evid.

404(b). Specifically, he challenges the prosecution's successful introduction of his 1988 and 1989 federal tax returns as improper under this rule as he was only charged with making false statements on his 1990 and 1991 returns. As an initial matter, the admission of the two returns was not Rule 404(b) evidence because they were not offered to show prior wrongful acts. Rather, the Service introduced the two returns to show prior "good" acts; that is, that Dr. Ahee knew how to file proper tax returns yet consciously chose not to do so in the subsequent years of 1990 and 1991. Moreover, the prosecution informed Dr. Ahee prior to trial of its intent to introduce the returns, and Dr. Ahee made no timely, pretrial motion to exclude the evidence. At trial, defense counsel objected to the returns, but only on relevancy grounds, not under Rule 404(b). Thus, not only do Dr. Ahee's contentions lack merit, they were not properly preserved for presentation to this Court.

Dr. Ahee also asserts that the district court erred in allowing prosecution witnesses to offer hearsay testimony. However, he makes only a passing reference to this contention in his appellate brief, with no citation to the record nor any further argument or even citation to relevant authority. Such a skeletal treatment of an appellate issue is insufficient to preserve the allegation of error for review. *See United States v. Layne*, 192 F.3d 556, 566–67 (6th Cir.1999), *cert. denied*, 529 U.S. 1029, 120 S.Ct. 1443, 146 L.Ed.2d 330 (2000).

Dr. Ahee next asserts the trial court erroneously allowed two prosecution witnesses to testify as "experts" under Fed. R.Evid. 703 when the two individuals did not meet the requirements *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) and *Kumho Tire Company, LTD. v.*

*Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). However, he cannot point to anything in the record that indicates the trial judge ever granted the two witnesses in question, CPA Jeanguenat and Ann McEnanly, expert status. The trial judge actually brushed aside an attempt by the prosecutor to qualify CPA Jeanguenat as an expert during the course of the trial. As to Ms. McEnanly, an employee of the IRS who compiled exhibits used during the trial, the district court found that she did not offer expert testimony. The district court also found that she had laid a proper foundation for any opinion testimony which she may have given. Since there are no rulings by the trial court that the two witnesses were experts, Dr. Ahee's challenge to non-existent rulings is without merit.

■ Dr. Ahee further asserts that the Service constructively and improperly amended the indictment returned by the grand jury when the prosecution questioned government witnesses about Dr. Ahee's "gross income" when the charging instrument specifically claimed that he had misstated his "total income" on his 1990 and 1991 tax returns. However, as noted by the prosecution, the testimony at trial was not offered in an attempt to charge Dr. Ahee with a different offense. Rather, in order to arrive at a "total income" figure on a tax return, the tax payer (and the IRS) must first calculate "gross income." Introduction of evidence regarding Dr. Ahee's gross income and the components of such a figure thus do not amount to a constructive amendment of the indictment.

■ Next, Dr. Ahee contends that the prosecution failed to adduce sufficient evidence to support his convictions because no witness was able to testify as to his intent at the time he filed the 1990 and 1991 "zero returns" or to testify that the applicable laws imposed any duty upon Dr.

Ahee to pay federal income taxes. When reviewing a sufficiency challenge, this Court must determine whether, viewing the trial testimony, exhibits and other evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Additionally, when performing this review, the Court may not reweigh the evidence, reevaluate the credibility of the witnesses, or substitute its judgment for that of the jury. *See United States v. Hilliard,* 11 F.3d 618, 620 (6th Cir.1993).

There was no direct evidence presented at trial of Dr. Ahee's intent at the time of filing the "zero returns" for 1990 and 1991 in April of 1995. It would be a rare case that such testimony or other evidence would be available to the prosecution. Nevertheless, the Service presented sufficient circumstantial evidence to justify a finding that Dr. Ahee misstated his total income on the returns, that he knew that the stated income amounts were incorrect, and that the misstatements were intentional. This included testimony and documentation showing that Dr. Ahee had filed proper returns in prior years and was thus aware of his obligations as a taxpayer, the testimony of Dr. Ahee's personal accountant that Dr. Ahee had been informed that either the Shorepointe Chiropractic Trust or Dr. Ahee was responsible for paying taxes, and the testimony that Dr. Ahee had admitted to significant income in order to secure a mortgage loan at the same time he denied having any income for federal tax purposes.

■ The crux of Dr. Ahee's argument on this issue is that the Service has not established his responsibility to pay taxes and that testimony regarding gross receipts does not necessarily prove that he

understated his income. This once again demonstrates Dr. Ahee's misunderstanding of 26 U.S.C. § 7602. The crimes for which he was convicted do not involve allegations of nonpayment of taxes or underpayment of taxes, but rather the making of false statements on a federal tax form. Although gross receipts do not equal total income under the Internal Revenue Code, circumstantial evidence concerning prior years' returns and diversion of substantial amounts of income into a trust justify a rational trier of fact in finding beyond a reasonable doubt that Dr. Ahee's income for the relevant tax years was greater than zero. The same pattern of conduct also justifies the conclusion that Dr. Ahee knowingly misstated that income in violation of § 7602.

## VI. JURY INSTRUCTIONS

■ Dr. Ahee also briefly argues that the district court erred in failing to instruct the jury on the definition of gross income. As noted by the Service, however, defense counsel chose not to object to the instructions as given. Since no objection was made, this Court may only reverse if the trial judge committed plain error. *United States v. Alt,* 996 F.2d 827, 829 (6th Cir.1993). *See also Reynolds v. Green,* 184 F.3d 589, 594 (6th Cir.1999). Here, the jury had before it, through Dr. Ahee's testimony on cross-examination, the statutory definition of gross income, and was specifically instructed to use its common sense in considering and weighing the evidence in the case. Under such circumstances, and because the defendant was charged and convicted with making false statements regarding his "total income," not his "gross income," the district court did not commit plain error in failing to give an explicit definition of a term not included in the indictment.

## VII. CLOSING ARGUMENT

■ In his final challenge, Dr. Ahee contends that the prosecution engaged in improper conduct during its closing argument by appealing to the pecuniary interests of the jury. Prosecutorial misconduct typically will not result in reversible error where the misconduct was not flagrant or where the proof of guilt is overwhelming. *United States v. Bess,* 593 F.2d 749, 757 (6th Cir.1979). First, we determine whether the conduct was improper under *United States v. Bess,* 593 F.2d 749 (6th Cir.1979). Improper conduct is then examined for flagrancy under *United States v. Leon,* 534 F.2d 667 (6th Cir.1976). If the conduct is found not to be flagrant, we will reverse only when (1) the proof against the defendant was not overwhelming, (2) opposing counsel objected to the conduct, and (3) the district court failed to give a curative instruction. *United States v. Carroll,* 26 F.3d 1380, 1384–90 (6th Cir. 1994) (reconciling *Bess* and *Leon* ). In the absence of an objection, only flagrant conduct will warrant a "plain error" reversal. *Id.* at 1385 n. 6. *United States v. Brown,* 66 F.3d 124, 127 (6th Cir.1995). Here, Dr. Ahee cannot point to either flagrant misconduct or timely objection by his counsel in the record. The argument of the prosecutor did ask the jurors to use their common sense in evaluating the case and did submit that Dr. Ahee did not want to pay income taxes for his own selfish purposes. Those suggestions, however, were well within the bounds of acceptable argument and in no way improperly appealed to the jurors' pecuniary interests. Dr. Ahee's arguments to the contrary are without merit.

## CONCLUSION

Dr. Ahee raises numerous issues in his attempt to extricate himself from these charges. For the reasons stated above, none of the arguments have merit. The

district judge committed no reversible errors. The verdict of the jury is AFFIRMED.